By the Court—Woodruff, J.
The tenth section of the act under which the plaintiffs are organized as a corporation (Session Laws of 1853, ch. 466, § 10, p. 908,) makes it the unqualified duty of the Comptroller (on receiving the certificate of the Attorney-General) to cause an examination to be made, either by himself or by three disinterested persons specially appointed by him for that purpose, for the purpose of certifying to the fact that the capital is paid .in, &c. This duty is so unqualified and so plainly imposed on the Comptroller, that it is the right of the applicants to have it performed when they present a case within the statute, and require such performance. Section 27 of the act prescribes the payment of twenty dollars by any association proposing to organize a new *152 company under the act; it is to be paid nominally for filing the declaration required by the third section, and for nothing else, (in the case oí a new company,) but it is “ to be appropriated towards paying the expenses of executing said act.” The fair construction of which language is that it shall cover all the services and labor required to be performed by the Comptroller, under the act and the expenses incurred therein.
It could hardly be claimed that if the Comptroller caused “ an examination to be made ~by himself ” he could lawfully require the payment of any further sum for fees, expenses or otherwise; as to him, the provisions of title 4 of chapter 4 of part 3, section 2 of the Rev. Stats., giving to public officers the fees for any service, which are provided in the statute requiring the service, or providing the compensation therefor; and the provisions of section 5 of the same title, which where any fee or compensation is allowed by law to any officer or person for any service, forbids his taking or receiving any other or greater fee or reward for such service, seem directly applicable. (2 R. S., p. 650, §§ 2,5.)
It is required of the Comptroller that he cause the examination to be made, and a fund is provided which is to be appropriated towards paying the expenses of executing the act.
A most natural inference is that if the Comptroller’s duties for the time being are so engrossing that it is necessary to employ disinterested persons to make the examination, the expenses of that examination shall be defrayed out of the twenty dollars, or at all events, that the association shall not be required to pay anything more. The associates are entitled to have the examination made when they have complied with the provisions of the. act, paying the twenty dollars and producing to the Comptroller the proper certificate of the Attorney General. If the State has imposed upon the Comptroller official duties which he cannot perform in person, but may perform by appointing others, and which, by law, he must perform, he has doubtless the incidental power to make to his appointees a just *153 compensation, out of the fees appropriated to that purpose, and perhaps, if they are not sufficient, then to create a just charge against the State, but it is difficult, I think, to find any warrant for requiring the association to pay anything. more than the act prescribes.
If this be so, it follows that the defendants could not lawfully require the plaintiff to malee any payment for an examination which it was the duty of the Comptroller to cause to be made, either by himself or by his appointees, and for which he could legally require no other conditions than compliance with the statute.
In this view of the subject, it seems to me quite clear that if the Comptroller had required the plaintiff to make the payment which was made, his act would have been wholly illegal. I am not able to perceive that such a requirement by his appointees is any less so. They represent the Comptroller, in making the examination, he causes the examination to be made, by himself or by them, as he may see fit, they derive all their authority from his appointment, they act in his stead, and they make their return to him as the basis of his further action.
Being paid, can the money, though illegally exacted, be recovered back ?
There is nothing, in my opinion, in the claim that it was •obtained by duress, in the ordinary sense in which that expression is used. The examination was completed. The defendants had signed and delivered to the plaintiff the certificate, upon the delivery of which, to the Comptroller, it became his duty to deliver a certified copy of the charter, on filing which the association had a right to commence business.
On the other hand the payment was not, in my judgment, a voluntary payment, in the sense in which that term is used, when it is said that money voluntarily paid cannot be recovered back. It was a payment exacted by these defendants, who were acting for and in the place of the Comptroller, in a matter of great importance to the plaintiff, and exacted by a claim of right, as officers, and *154 while they had, or assumed to have, some control over the subject. There is testimony to the effect that they threatened to'telegraph to the Comptroller to stop the issuing of what the witness calls the license, which can only mean the certified copy of the charter, on filing which they were authorized to commence business. If there was doubt on this question of fact, and this is material, it should have been submitted to the jury. How, this was an assumption of official control over the subject, and the avowal of a purpose to exercise it, unless the fees demanded were paid; it is not necessary to regard this as obtaining money per minas in the ordinary sense; it may have been a declaration which they had no actual power to carry into execution. The Comptroller had not the right, and we cannot admit that he would have had the disposition to detain the papers for a moment, upon that ground, after he fully understood thesubject. But it was nevertheless an exaction made without right, under color of official control in the matter, with which the plaintiffs were not bound to contend, at the hazard of the consequences of a telegraphic dispatch forwarded by the Comptroller’s own appointees, which might and probably would reach him before the plaintiff’s messenger could reach Albany and obtain the papers which the plaintiffs required. It may well be assumed that some delay for the purpose of further inquiry and investigation would have been caused by such a communication to the Comptroller. Although the defendants had no legal power to interfere further, and although the plaintiffs would have had legal redress, and might probably have compelled the Comptroller to give them the required certified copy of their charter ; still they were not bound to take the hazards of delay and the risk of having to litigate the question, and treat the requirements and threats of these appointees of the Comptroller as idle words. They might, as they did, pay the money exacted, and when the pressure under which they paid was removed, submit the right to determination, as they have done, by reclaiming the money as an illegal exaction; as money obtained by *155 the defendants, without consideration, and which,.in justice and equity, they may'not retain. Persons dealing with public officers and their deputies and agents do not stand with them mpon equal ground. In such cases I concur with the views of Martin, B., in Steele v. Williams (20 Law and Eq. R., 319 ; 8 Exch. R., 625,) that the payment is not voluntary. In that case the payment was not made until all the services had been rendered, and if the payment had been refused the party could not have been deprived of the benefit of the services. And to the like effect is Dew v. Parsons, (2 Barn. & Ald., 562,) and see Morgan v. Palmer, (2 Barn. & Cres., 729.) The general doctrine that where an officer exacts higher fees than he is entitled to by law, they may be recovered back, is found in Frye v. Lockwood, (4 Cow., 454 ;) Walker v. Ham. (2 N. Hamp. R., 39,) and I am by no means willing to say that the right to recover back depends on the question whether the payment was before or after the service was rendered. It should be deemed sufficient that the officer takes advantage of his official position to make the exaction; due protection of those whose necessities require them to deal with persons exercising official powers, or discharging duties in their nature official, requires that moneys so paid should be subject to reclamation.
In Britton et al. v. Frink, the facts were these: The agent of the defendant in a suit, called upon the plaintiffs’ attorney and offered to pay the amount of debt and costs. They agreed upon the amount of the debt, and the attorney made out his bill of costs, which the agent paid; the bill of costs contained some charges to which the attorney was not legally entitled. It was held in the Supreme Court and in the Court of Appeals that the money so overpaid might be recovered back. It was argued that there was no mistake of fact, and that the payment was voluntary. But the argument did not avail. It was an illegal exaction by an officer of the Court, against which parties are entitled to protection. (See the case reported, 3 How. Pr. R., 103.)
*156 These views dispose me to order judgment for the plaintiffs in this ease upon the verdict, without enlarging upon the danger of exposing persons appointed by the Comptroller to make an examination so important to the public safety, to the temptation which might be brought to bear upon them in the discharge of their duty, if, on the one hand they could require the proposed corporation to pay any sum they saw fit, under color of charge, for fees however large; or if, on the other hand, it be permitted them to receive any compensation (beyond their just claim upon the Comptroller or the State,) from those whose affairs they are appointed to scrutinize 'for the public protection.
It may be that persons so situated might yield to the desire of the corporation, to make them some additional compensation where their services had been protracted and arduous, and accept a gratuity therefor. (Vide, language of Martin, B., 20 Eng. Law and Eq., 324.) But even that under the peculiarly confidential position which they hold, as the guardians of the public, to protect the public against unsound and merely adventuring associations claiming chartered privileges, would expose them to suspicion and be liable to many of the severe criticisms found in the opinions in Hatch v. Mann. (15 Wend., 44.)
The suggestion that the action should have been brought against each of the defendants severally for $100, is answered, I think, by the fact that the money was paid to them jointly by a check drawn payable to their joint order and by them jointly indorsed. This, I think, imposed upon them a joint responsibility, and the plaintiff was not bound to regard the manner in which they divided the fees among themselves.
These considerations lead me to say the plaintiffs should have judgment upon the verdict.
Judgment for the plaintiffs accordingly.