United States Trust Company of New York, Appellant, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Appellant.

*Assessment of a tax against a corporation — "erroneous" and "illegal" assessments, distinguished — remedy, by certiorari, by action to recover back the tax — jurisdiction of assessors — payment of tax under protest.*

A manner of ascertaining the value of the capital stock of a corporation to be assessed as provided by chapter 456 of the Laws of 1857, by taking the value of the share stock, instead of the capital owned by the corporation, is erroneous, and in taxing corporations under such act the subject of valuation and assessment is never the share stock but always the company's capital and surplus, which should be assessed at its actual value when it is known or can be ascertained.

An erroneous assessment is one where the officers making the assessment have power to act, but err in the exercise of their power, and an illegal assessment is one where such officers have no power to act at all, and they are not aided by their decision that they have.

If the amount of a tax is simply erroneous, and its payment has not been compulsory, the exclusive remedy is by certiorari, and a person who fails to avail himself of such proceeding is without remedy, but where an assessment is illegal and void, or where one pays money upon an illegal or erroneous assessment, to prevent an illegal seizure of his person or property by one claiming authority to seize the same, the amount thereof may be recovered back in an action on the ground that the payment was compulsory, or by duress or extortion.

If commissioners of taxation have jurisdiction over the person and subject-matter, the fact that they proceeded upon a wrong basis, and thus made an erroneous assessment, as distinguished from an illegal one, will not render the assessment void.

Assessors cannot acquire jurisdiction to make assessments by determining that they have it, and their authority to act must always depend upon the existence of the jurisdictional facts described in the statute.

In a case where assessors have jurisdiction to impose a tax, which is paid, it cannot be recovered back by the taxpayer, without first setting aside the assessment, and where, without first taking proceedings for such purpose, a voluntary payment is made, no recovery can be had, even though it be held that the assessment was excessive and erroneous.

A tax voluntarily paid cannot, as a general rule, be recovered back, and it is immaterial that it has been illegally laid, the presumption being that all payments are voluntary until the contrary is shown.

A suit to collect a tax levied by the assessors of the city and county of New York does not lie until proper demand has been made therefor.

Where there is compulsion, actual, present, potential, in inducing the payment of a tax by force of process available for instant seizure of person or property,

and the demand is really illegal, then the party, by giving notice of the illegality, and of his involuntary payment, can recover back the money so paid in an action brought for that purpose. Where the payment is voluntary a protest with notice of an intent to reclaim is not sufficient to sustain a recovery in an action brought to recover back the amount thereof, as the voluntary character of the payment still remains, notwithstanding the notice, and is fatal to the action.

CROSS-APPEALS by the plaintiff, the United States Trust Company of New York, and by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 18th day of October, 1893, upon the decision of the court, after a trial at the New York Special Term, adjudging and decreeing that the taxes assessed upon the plaintiff's capital and surplus by the defendant for the years 1888, 1889 and 1890 and paid could not be recovered back, and granting the plaintiff judgment for the amount of the taxes assessed against and paid by it for the year 1887.

The action was brought to recover $139,765.71, being the aggregate amount paid for taxes in each of the years 1887, 1888, 1889 and 1890, on the ground that the assessments were void and the payment of the taxes was induced by duress and made under a mistake, and to cancel the assessments themselves.

The plaintiff is a domestic corporation transacting business as a trust company in the city of New York. In each of the years mentioned plaintiff was assessed for taxation on its capital stock, pursuant to the provisions of the act of 1857, relating to taxing incorporated companies. (§ 3, chap. 456, Laws of 1857.)

In each instance plaintiff furnished the commissioners sworn statements showing its condition in those years for the purpose of assessment, and through its officers or attorneys appeared before the commissioners, while the books were open for correction, and applied for cancellation or reduction of the assessment. The grounds of application for cancellation or reduction of the assessment in each year was, that according to these statements the plaintiff had no personal property subject to taxation, except for the year 1890 ; but the commissioners, instead of canceling, reduced the assessment. The result of these proceedings was, that the assessments were confirmed for amounts in each year the tax on which

in the aggregate make up the sum for which a recovery is sought in this action.

Plaintiff took no proceedings by certiorari to review any of the assessments, but paid the taxes as levied, either with interest accrued at the time of payment, or less the rebate allowed by law for prompt payment.

In the years 1888, 1889 and 1890 the taxes were paid (excepting a small portion of the taxes of 1890) during the first weeks that the books were open, and in each of said years plaintiff received a rebate of interest, this being one of the inducements stated by the president of plaintiff for the early payments of taxes in these years.

In the year 1887 payment of the tax was deferred until December twenty-ninth, on which day payment was made, with interest, and at the same time a written notice was served, either upon the mayor, or comptroller, or the receiver of taxes of the city, in the following form :

" The United States Trust Company of New York being informed that you claim that it is indebted to you to the amount of $37,231.77 for a tax on personal estate of the said Trust Company, and in response to your demand therefor, it hereby pays the same under protest, reserving all rights to recover the amount so paid under protest, or any part thereof, believing the tax above referred to to have been unlawfully assessed, and the demand for the payment thereof to be unlawful.

"UNITED STATES TRUST CO. OF NEW YORK,
"By J. S. CLARK,
"2d Vice-Prest.

"To the Mayor, Aldermen and Commonalty of the City of New York; the Comptroller of the City of New York; the Receiver of Taxes of the City of New York."

No proof was offered of an actual demand by the receiver of taxes on the plaintiff for the amount of the tax laid in 1887. The person who paid the tax on behalf of plaintiff had died before the trial of this case, and the receiver of taxes was also then deceased. Upon whom the notice of protest was served, or the manner of its service, is not made to appear.

It does not appear that any officer of the defendant had authority

at the time of payment of the tax of 1887 to enforce collection. of the same, or that any officer threatened to enforce the same, or had made any attempt to seize the property of the plaintiff under color of law or otherwise.

The court at Special Term held that the tax of 1887 was paid under duress, and that the amount so paid might be recovered back in this action, and that the taxes for the other years could not be so recovered. Judgment was entered accordingly, and both parties have taken appeals to this court.

*Edward W. Sheldon,* for the plaintiff.

*George S. Coleman,* for the defendant.

O'BRIEN, J. :

Upon the part of the plaintiff it was contended that the disputed taxes were imposed without jurisdiction and were void, and to support this argument it is insisted, upon the authority of *People ex rel. Union Trust Co.* v. *Coleman* (126 N. Y. 433), that the plaintiff's capital stock was not taxable.

In that case the question of the right to fix the tax in the manner in which it was done by the commissioners here was directly involved, and upon the merits, if plaintiff is in the position to avail itself of the rule of law in that case, it would be conclusive upon the rights of the parties, because it was therein held that the manner of ascertaining the value of the capital stock to be assessed as provided by the act of 1857, by taking the value of the share stock instead of the capital owned by the corporation, was erroneous, and that in taxing corporations under said act the subject of valuation and assessment is never the share stock, but always the company's capital and surplus, which should be assessed at its actual value when that is known or can be ascertained. There the question was raised by the Union Trust Company by certiorari, unlike the present action, which is brought directly to recover back moneys paid after the plaintiff had neglected to avail itself of proceedings by certiorari.

It is insisted that the present suit, unlike the case cited, involves a collateral attack upon assessments for taxation made by the proper

authorities having jurisdiction of the person and subject-matter, and that it, therefore, cannot be maintained. This argument, of course, is supported by the contention that, the plaintiff having omitted to avail himself of the full and adequate remedy provided by law for the review of illegal assessments, it cannot now be heard to question either the legality or the amount of the tax.

The determination of this contention must necessarily turn upon the point as to whether or not the assessment was illegal or merely erroneous.

As said in *Nat. Bank of Chemung* v. *Elmira* (53 N. Y. 49): "It is conceded that the plaintiff is entitled to recover if the assessment is to be regarded as illegal, and not simply erroneous. * * * The distinction is between an erroneous and an illegal assessment. The former is when the officers have power to act, but err in the exercise of the power; the latter where they have no power to act at all, and it does not aid them to decide that they have."

This distinction is also pointed out in Dillon on Municipal Corporations (4th ed., p. 1146, § 941), wherein it is said: "Accordingly, an action lies against a municipal corporation to recover the amount of taxes compulsorily collected by it upon an illegal assessment in respect of property not liable to taxation. So an unlawful tax for a local improvement exacted by the city under color of process, and paid to the city's officers under protest, may be recovered, with interest. The tax or assessment must be illegal or void, and not simply irregular, as, for example, an irregularity in mode of assessment, overvaluation, etc., to authorize its recovery back."

Many other authorities might be cited for the proposition that if the amount is merely erroneous, and its payment has not been compulsory, then the exclusive remedy is by certiorari, and one who fails to avail himself of this proceeding is remediless. Where, however, the assessment or tax is illegal and void, or where one pays money upon an illegal or erroneous assessment, to prevent an illegal seizure of his person or property by one claiming authority to seize the same, such may be recovered back in an action, on the ground that the payment was compulsory or by duress or extortion.

Here, therefore, if the plaintiff's claim is right, that the assessment was void, then the failure to proceed by certiorari is no bar to the maintenance of this action.

What the commissioners, as shown, undertook to do was to assess the capital stock under the act of 1857 ; and what they did was, in fixing the value of the capital stock for the purpose of taxation, to erroneously take the value of the share stock instead of the capital of the company and its surplus.  If the commissioners had jurisdiction over the person and subject-matter, then the fact that they proceeded upon a wrong basis and thus made an erroneous assessment, as distinguished from an illegal one, would not render the assessment void.  We think that here the commissioners had jurisdiction of both the person and subject-matter.  They were authorized to fix a tax on the capital stock, and in ascertaining the value thereof they erroneously determined it by taking the value of the share stock, and not that of the capital and surplus of the corporation.  Their jurisdiction over the person is not denied, and it seems equally clear that they had jurisdiction of the subject-matter, but by taking a wrong basis of valuation they assessed the plaintiff too much, and hence were guilty, not of an illegal act, but of an erroneous valuation of plaintiff's property subject to taxation.

In all the cases to which we have been referred by plaintiff, and wherein the assessment was held to be void, it will be found that the decisions proceeded upon a finding that the assessors had no jurisdiction either over the person or the subject-matter, and as illustrating this we may refer to but one or two cases.  Thus, in *Nat. Bank of Chemung* v. *Elmira* (*supra*) an attempt was made to tax the stock of a National bank, which was not the subject of taxation.  And *In re Catholic Protectory* (77 N. Y. 342) the real estate was exempt from taxation, and the commissioners of taxes were, therefore, without jurisdiction to assess it.

In *McLean* v. *Jephson* (123 N. Y. 143) it is said : " In view of the fact that the authorities on this point are all uniform, we will only refer to *In re N. Y. Catholic Protectory* (77 N. Y. 342), because it recognizes as an established principle that the determination by assessors that a person or his property are taxable, is jurisdictional, and that an error made by them in such determination against the taxpayer is fatal to the validity of the assessment."

That very case (*McLean* v. *Jephson*) was one where the assessors had no jurisdiction over the person, and as therein said : " Assessors cannot acquire jurisdiction to make such assessments by determining

that they have it, and their authority to act must always depend upon the existence of the jurisdictional facts described in the statute."

We think we have indicated with sufficient clearness the opinion we entertain that this is a case of an erroneous, and not an illegal, assessment.

The plaintiff, anticipating that the decision might be against it upon its claim that the assessment was void, further contends that though it should be held to be an erroneous and not an illegal assessment, still it was not confined to its remedy by certiorari, but can maintain an action such as this to recover it back.    Support for this position is claimed to be found in the case of *People ex rel. Warren* v. *Carter* (119 N. Y. 557), wherein the court say: " Where, however, one pays taxes imposed under an assessment which is not void, but simply excessive and unequal, and gives notice of his proceedings to review and correct the same, thus indicating that he intends to reserve his rights and does not intend to waive or abandon his proceedings, we know of no principle of law upon which such a payment under protest can be set up as a bar to the further prosecution of the proceedings.    By such payment he waives no rights, and he does no wrong and creates no embarrassment to the municipality or officer taking his money, and he cannot be estopped thereby."

This does not change the rule which has been held in the other cases to which reference has been had, because in the case last cited, unlike the one at bar, the payment was made under protest after the writ of certiorari was issued and while such proceedings were pending.    And if here the plaintiff had taken the proceeding given by law to test the amount of the assessment by certiorari, and thereafter had had it canceled on such proceeding, then undoubtedly it could recover even though the money had been paid.    But in a case where the assessors have jurisdiction to impose the tax, which is paid, it cannot be recovered back by the taxpayer without first setting aside the assessment.    (*Trimmer* v. *City of Rochester*, 130 N. Y. 401.) And where, without first taking proceedings for such purpose, a voluntary payment is made, no recovery can be had, even though it be held that the assessment was excessive and erroneous.    That this is true can be well illustrated by taking the case of two who are

claimed to be severally liable upon an instrument upon which judgment is rendered against them. If one after demand should pay, and the other appeal and upon such appeal succeed, could it be argued that the former would be entitled to recover the moneys which he had voluntarily paid? We think under the authorities that this could not be done. And yet that is the position of the plaintiff here.

After making some futile protest with respect to the tax of 1887, voluntary payments were made in the succeeding years, during which the Union Trust Company was proceeding by certiorari to test the manner in which the assessment was levied upon its capital stock. If solely because the latter succeeded in having the assessment canceled, the plaintiff were permitted to recover in this action, then all the cases which make a distinction between voluntary and compulsory payments would be overturned. We do not think that where, as here, all the taxes, except for the year 1887 (which we will consider separately), were voluntarily paid, and the amount so paid has been appropriated by the city to meet its obligations, both State and municipal, that return thereof should now be had at the expense of the other taxpayers, unless such return is justified in law.

The general principle that a tax voluntarily paid cannot be recovered back, we regard as elementary, and that it is immaterial that it has been illegally laid, the presumption being that all payments are voluntary until the contrary is shown. (Cooley on Taxation [2d ed.], 809.)

These conclusions would result in affirming the decision of the learned trial judge respecting the taxes paid in 1888, 1889 and 1890, and leave for determination the question as to the tax for the year 1887.

It is insisted that this tax was paid under duress or compulsion, and many authorities are cited in this State and in others as defining what constituted compulsion, duress or coercion with respect to the collection of a tax. For example, the case of *Boston & Sandwich Glass Co.* v. *City of Boston* (4 Metc. 181, 187, 190). But in relying upon those cases, counsel overlooks what must always be considered, and that is, the difference in the laws of different States relating to the enforcement of taxes and the proceedings that may be taken in determining the question whether there is coercion or

duress.  Thus, as shown by the language of the opinion in the case last referred to, which arose under the laws of Massachusetts, the payment was held not to be voluntary.  It was therein said : "It arises from the power and authority placed in the hands of a collector of taxes, by virtue of his warrant, to levy directly upon the property or person of every individual whose name is borne on the tax list in default of payment of the taxes.   *   *   *   Such warrant is in the nature of an execution running against the property and person of the party, upon which he has no day in court, no opportunity to plead and offer proof and have a judicial decision of the question of his liability."   That being the state of the case, the payments made to a collector of taxes may be considered compulsory and made under such circumstances as would authorize the party paying the money to recover it back if the tax were illegally assessed.

No such features appear in the case at bar, because when the tax of 1887 was paid in December of that year, the receiver of taxes had no authority to take any hostile proceedings against the plaintiff, nor could he authorize any such proceedings until after the fifteenth of January following.   There is no proof that the receiver had made a proper demand of the tax, without which even a suit to collect the tax would not lie.  (Consol. Act [Chap. 410 of 1882], § 848 ; *McLean* v. *Manhattan Medicine Co.*, 54 N. Y. Super. Ct. 371.)   As correctly urged by defendant, even if a lawful demand had been made, the receiver of taxes was then powerless to enforce it.   He could not issue his warrant to the sheriff or city marshal until January 15, 1888. (Consol. Act, § 853.)   Even if the receiver had had the power to issue his warrant, he was not compelled to resort to force, nor did he threaten to do so.   The authority to proceed by distress and sale is permissive, not mandatory.  (*McLean* v. *Myers*, 134 N. Y. 480.)   In the absence of any power or authority to compel payment on December 29, 1887, and of any threat to do so, and of any seizure of person or property, or of any irreparable injury reasonably to be apprehended, there was no compulsion to render the payment involuntary.   And the mere fact that a written protest was served on some one or in some way — or even if it had been properly served — would not prove coercion.

" Where there is compulsion actual, present, potential, in inducing

that payment by force of process available for instant seizure of person or property, and the demand is really illegal, then the party, by giving notice of the illegality and of his involuntary payment, can recover back the money so paid in an action brought for that purpose. Where the payment is voluntary, as in this case, a protest with notice of an intent to reclaim is not sufficient to sustain a recovery. The voluntary character of the payment still remains, notwithstanding the notice, and is fatal to the action." (*Peebles* v. *City of Pittsburgh*, 101 Penn. St. 304, 309; *Railroad Co.* v. *Comrs.*, 98 U. S. 541.)

That none of these features was present in any proceedings taken to enforce the law of 1887 we think clearly appears, and the payment made should be held to be voluntary.

The application of this rule of voluntary payments to the plaintiff is not harsh. It had several remedies open, and it might either have waited, or, if it deemed that improper because not desiring to have a claim against it unpaid, which in some way might affect its standing, it could have taken proceedings by certiorari, as was done in the case of *Warren* v. *Carter* (*supra*), and after obtaining the writ, could have paid the amount and gone on with the proceeding.

Notwithstanding the written protest, our conclusion is that no coercion or duress having been applied as against plaintiff to enforce payment, such payment was voluntary and cannot be recovered back in this action.

In our opinion, therefore, the judgment, in so far as it permitted the recovery for the tax of 1887, should be reversed, and in other respects affirmed, with costs and disbursements to the defendant.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed, in so far as it permitted recovery for the tax of 1887, and in other respects affirmed, with costs and disbursements to defendant.