WESTERN MASSACHUSETTS MUT. FIRE INS. CO. v. HILTON et al.

(Supreme Court, Appellate Division, First Department.   June 16, 1899.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—INSURANCE.
   A statute declaring void a contract between a citizen of one state and
   corporation of another, made and to be performed in the other state, in-
   suring property within the former state, contravenes Const. U. S. Amend.
   14, which prohibits any state from depriving any person of life, liberty, or
   property without due process of law, and is void.

2. SAME—PUBLIC POLICY—ENFORCEMENT OF POLICY.
   A contract of insurance between a citizen of one state and a corpora-
   tion of another state, made and to be performed in that state, insuring
   property within the former state, where the corporation is not authorized
   to do business in the former state, whose insurance laws declare contracts
   by insurance companies not authorized to do business therein, void, is
   not so repugnant to public policy as to warrant a court in refusing to en-
   force it.

Appeal from trial term, New York county.

Action by the Western Massachusetts Mutual Fire Insurance Com-
pany against Henry Hilton and others.   From a judgment in favor
of plaintiff, defendants appealed.   Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, and IN-
GRAHAM, JJ.

Ernest Hall, for appellants.
James L. Bishop, for respondent.

INGRAHAM, J.   The plaintiff, a mutual fire insurance company
organized and existing under the laws of the state of Massachusetts,
and transacting business in that state, received at its office in Spring-
field, Mass., prior to February 15, 1894, an application signed by Tate
& Cornwall, who appear to have been insurance brokers doing busi-
ness in the city of New York, for a policy of insurance to insure Henry
Hilton and Hilton, Hughes & Co., as interest may appear, upon a
stock of dry goods contained in the building on Broadway and Ninth
and Tenth streets in the city of New York, the date of the policy to
be February 15, 1894, and the term thereof one year.   That applica-
tion was accepted by the plaintiff company, and a policy was issued,
dated Springfield, Mass., February 15, 1894, whereby the plaintiff, in
consideration of $145 to it paid by the insured, and the agreement
by the insured, as a condition of the policy, that the said insured or
legal representatives should pay, in addition to said cash premiums,
all such sums as might be assessed by the directors of said company
pursuant to the laws of the commonwealth of Massachusetts, insured
Henry Hilton and Hilton, Hughes & Co. and their legal representa-
tives against loss or damage by fire to the amount of $10,000 on the
wholesale and retail stock described in the policy, and located in the
brick and iron building on Broadway, between Ninth and Tenth
streets, in the city of New York, for the term of one year, beginning
on February 15, 1894, at noon.   This policy was sent by express to
Tate & Cornwall, from whom the application emanated, and the
plaintiff received by mail a check drawn by Hilton, Hughes & Co.,
dated at New York, and received at Springfield, Mass., March 21,

1894, for the amount of the premises.   Tate & Cornwall were not employed by the plaintiff to do any business for the plaintiff company. This policy remained in full force until February 15, 1895.   By an act of the state of Massachusetts, proved upon the trial, it is provided that each policy holder should "be liable to pay his proportional part of any assessment which may be laid by the company in accordance with law and his contract on account of losses and expenses incurred while he was a member, provided he is notified of such assessment within two years after the expiration of his policy." "Whenever a mutual fire insurance company is not possessed of cash funds above its insurance reserve sufficient for the payment of incurred losses and expenses, it shall make an assessment for the amount needed to pay such losses and expenses upon its members liable to assessment thereof in proportion to their several liability," and that "when, by means of depreciation or loss of its funds or otherwise, the cash assets of such a company, after providing for its other debts, are less than the required premium reserve upon its policies, it shall make good the deficiency by assessment in the mode provided in the preceding section," before cited.   It appeared from the evidence that on August 1, 1894, there was an impairment of the insurance reserve for the payment of incurred losses and expenses by the plaintiff company amounting to $9,682.34, and that in each of the subsequent months to February 15, 1895, the losses and expenses increased that impairment.   On May 23, 1895, the directors of the plaintiff company met, and voted an assessment upon the policy holders of the company sufficient to meet its liabilities and to defray the expenses of making and collecting the same, as provided for in the statute of the state of Massachusetts, under which the plaintiff was organized and did business.   The total amount of the assessment as made against these defendants was $127.74.   Notice was given of this assessment to the defendants on August 23, 1895.   The defendants having failed to pay the assessment, this action was brought by the plaintiff to recover the same, and from the judgment in favor of the plaintiff the defendants appeal.

The complaint alleges that on February 15, 1894, these defendants entered into a contract of insurance with the plaintiff, and that the plaintiff was a foreign mutual fire insurance company organized and existing under and by virtue of the laws of the state of Massachusetts. The complaint is silent as to the place where this contract of insurance was made.   The proof, however, shows that the contract was a Massachusetts contract, and that fact is conceded by the defendants. By the acceptance of this policy, the defendants became legally liable to pay to the plaintiff the amount of the premium provided for in the policy.   The assessment made by the plaintiff was made in pursuance of the laws of the state of Massachusetts, and appears to have been for the loss or depreciation which accrued during the time the policy was in force; and, if this contract of insurance was a valid contract, it seems that the defendants were liable in the state of Massachusetts for the amount recovered by this judgment.   The defendants, however, claim that this policy was void under the provisions of section 137 of the insurance law of this state.   Laws 1892,

c. 690.   This act is entitled "An act in relation to insurance corpora-
tions," and by section 1 it is made applicable to all corporations author-
ized by law to make insurance.    The act provides for the incorpora-
tion and control of insurance companies organized under the laws
of this state; regulates foreign insurance companies doing business
in this state, requiring a certificate of the superintendent of insurance
before any foreign insurance company can transact any business of
insurance in this state; provides for the taxation of such insurance
companies doing business in this state, for the winding up of insol-
vent insurance companies, for the appointment of agents by the super-
intendent of insurance to procure policies of fire insurance from cor-
porations or others not authorized to do business in this state; and
then, by the last clause of section 137 of the act, it is provided that
"all fire insurance policies issued to residents of this state on prop-
erty located herein by companies that have not complied with the re-
quirements of the general insurance laws of the state shall be void,
except such as shall have been procured as herein set forth"; and it
is claimed by these defendants that under this provision of the stat-
ute this contract of insurance, made in the state of Massachusetts,
and to be performed in that state, was void, and cannot be enforced
in this state.    The section in question does not attempt to regulate
the enforcement of a contract, if a valid contract was made.    It
makes certain contracts of insurance issued to residents of this state
on property located herein void ab initio, but as to the particular con-
tracts affected no general classification is attempted.    It is a statute
in derogation of the right to contract, and hence is not to be extended
beyond its manifest purpose and intention.   "It is a general rule of
law that a contract entered into in another state or country, if valid
according to the law of that place, is valid everywhere."   Van Voor-
his v. Brintnall, 86 N. Y. 24.   "But it [the supreme court] has often
affirmed and acted on the general rule that contracts are to be gov-
erned, as to their nature, their validity, and their interpretation, by
the law of the place where they were made, unless the contracting
parties clearly appear to have had some other law in view."   Liver-
pool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct.
469; Milliken v. Pratt, 125 Mass. 374.   It must be conceded that this
contract was valid in the state of Massachusetts, where it was made,
and where it was to be performed.    If a loss had occurred while this
policy was in force, the plaintiff would have been liable in Massa-
chusetts for the loss; and it follows that these defendants would
have been liable for this assessment in that state, and, if they had
been sued for it there, the contract would have been enforceable, and
the plaintiff would have been entitled to recover.   A judgment so
obtained against these defendants would have been enforceable in
this state by action, notwithstanding the prohibition contained in the
statute of this state.   We have, then, to consider whether the pro-
visions of this statute affect the validity and enforceability in this
state of a contract made in Massachusetts, valid by the laws of that
state, and enforceable there.    The object of the statute which con-
tains this prohibition is to regulate the business of insurance con-
ducted in this state.    It regulates the contracts of all individuals

or corporations who do business in this state, and prohibits all corporations or individuals from carrying on the business of insurance or making any contract of insurance within this state, except as authorized by the statute.   The section (137) under consideration prohibits insurance brokers from acting as agents to procure policies of insurance from corporations or others which are not authorized to do business in this state, except when a license is issued to them under the provisions of the section, and prohibits such agents from obtaining insurance by virtue of such license, except upon certain conditions specified in the section.   The act then provides that all fire insurance policies issued to residents of this state on property located here by companies that have not complied with the requirements of the general insurance law shall be void, except such as shall have been procured as provided by the section.   Was it the intention of the legislature by this statute to prohibit all citizens of this state from making contracts in another state for the insurance of property here, and making all such contracts of insurance void?   And, if such was the intention, is the statute in violation of the constitution of the United States?   It must be conceded, I think, that the prohibition, in its liberal terms, is broad enough to include all contracts, whether made in this state or out of the state, and which insure property located within this state.   If the legislature had power thus to restrict the ability or right to contract of residents of this state, and has exercised the power, a contract, when made in violation of the prohibitions of the statute, would undoubtedly be void ab initio, and incapable of enforcement.   There can be no doubt of the power of the legislature to regulate the validity and interpretation of contracts made within this state, or to determine what foreign corporation shall do business here; and, so far as this provision declares a contract made here in violation of this statute void, it is clearly a valid exercise of legislative power.   Paul v. Virginia, 8 Wall. 168; Philadelphia Fire Ass'n v. New York, 119 U. S. 110, 7 Sup. Ct. 108; Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737.   But a different question is presented where the legislature attempts to intervene, and declare void contracts valid in the place where made and to be performed.   This latter question seems to have been determined by the supreme court of the United States in the case of Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, where Mr. Justice Peckham, in delivering the opinion of the court, and speaking of a statute of the state of Louisiana, says:

"The supreme court of Louisiana says that the act of writing within that state the letter of notification was an act therein done to effect an insurance on property then in the state in a marine insurance company which had not complied with its laws, and such act was, therefore, prohibited by the statute. As so construed, we think the statute is a violation of the fourteenth amendment of the federal constitution, in that it deprives the defendants of their liberty without due process of law. The statute which forbids such an act does not become due process of law, because it is inconsistent with the provisions of the constitution of the Union. The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he

will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."

And again, at page 590, 165 U. S., and page 432, 17 Sup. Ct., he says:

"Has not a citizen of a state, under the provisions of the federal constitution above mentioned, a right to contract outside of the state for insurance on his property,—a right of which state legislation cannot deprive him? We are not alluding to acts done within the state by an insurance company or its agents doing business therein, which are in violation of the state statutes. * * * When we speak of the liberty to contract for insurance, or to do an act to effectuate such a contract already existing, we refer to and have in mind the facts of this case, where the contract was made outside the state, and as such was a valid and proper contract. * . * * To deprive a citizen of such a right as herein described without due process of law is illegal. Such a statute as this in question is not due process of law, because it prohibits an act which, under the federal constitution, the defendants had a right to perform. This does not interfere in any way with the acknowledged right of the state to enact such legislation in the legitimate exercise of its police or other powers as to it may seem proper. In the exercise of such right, however, care must be taken not to infringe upon these other rights of the citizen which are protected by the federal constitution. In the privilege of pursuing an ordinary calling or trade, and of acquiring, holding, and selling property, must be embraced the right to make all proper contracts in relation thereto; and, although it may be conceded that this right to contract in relation to persons or property, or to do business within the jurisdiction of the state, may be regulated, and sometimes prohibited when the contracts or business conflict with the policy of the state as contained in its statutes, yet the power does not and cannot extend to prohibiting a citizen from making contracts of the nature involved in this case outside of the limits and jurisdiction of the state, and which are also to be performed outside of such jurisdiction. * * * The mere fact that a citizen may be within the limits of a particular state does not prevent his making a contract outside its limits while he himself remains within it. * * * The Atlantic Mutual Insurance Company of New York has done no business of insurance within the state of Louisiana, and has not subjected itself to any provisions of the statute in question. It had the right to enter into a contract in New York with citizens of Louisiana for the purpose of insuring the property of its citizens, even if that property were in the state of Louisiana; and correlatively the citizens of Louisiana had the right without the state of entering into contract with an insurance company for the same purpose. Any act of the state legislature which should prevent the entering into such a contract, or the mailing within the state of Louisiana of such a notification as mentioned in this case, is an improper and illegal interference with the conduct of the citizen, although residing in Louisiana, in his right to contract and to carry out the terms of a contract validly entered into outside and beyond the jurisdiction of the state."

This case conclusively shows that an attempt of the legislature to declare invalid a contract entered into by citizens of this state with a foreign corporation, made and to be performed in a foreign state, and insuring property within this state, would violate the provisions of the fourteenth amendment of the federal constitution, and would be thus void. We are thus presented with the further question whether the courts of this state are justified in refusing to enforce this valid contract, and the remedy or right of action to enforce it. As was said by Chief Justice Taney in Bank v. Earle, 13 Pet. 589:

"Courts of justice have always expounded and executed them [contracts] according to the laws of the place in which they were made, provided that law was not repugnant to the laws or policy of their own country."

In Gooch v. Faucette (N. C.) 29 S. E. 462, it was said:

"There is a difference between the right and the remedy. The courts will look to the lex loci contractus, to construe the contract, but will not look there for the remedy."

This distinction is also discussed by the supreme court of Massachusetts in the case of Emery v. Burbank, 39 N. E. 1026, where Judge Holmes, in delivering the opinion of the court, says:

"When the law involved is a statute, it is a question of construction whether the law is addressed to the necessary constituent elements or legality of the contract on the one hand, or to the evidence by which it shall be proved on the other. In the former case the law affects contracts made within the jurisdiction wherever sued, and may affect only them. In the latter it applies to all suits within the jurisdiction wherever the contracts sued upon were made, and again may have no other effect."

And in speaking of an oral contract made void by the statute of the state of Massachusetts, he came to the conclusion that the statute, whatever it expresses, implies a rule of procedure broad enough to cover the case; and that a contract to make a will, made by a testator domiciled in Massachusetts, although actually made in another state, was a contract to make an effectual will, and therefore a will good by the law of the domicile; that the effect of the statute in question was to dictate a rule of evidence that a contract must have a certain form if it was to be enforced against the inhabitants of the state in its courts. In the case of Vanderpoel v. Gorman, 140 N. Y. 563, 35 N. E. 932, the question of the power of a foreign corporation to make an assignment for the benefit of creditors and the enforcement of such assignment valid by the law of the state of the domicile of the corporation, and which was prohibited by the laws of this state, was presented. The power of the legislature of this state over a foreign corporation, and the limitation of its power to give extraterritorial effect to our laws, is considered, and the only right of the legislature to affect a foreign corporation is clearly stated to be such acts as are performed within this state, or as to property located within this state; the court saying, at page 573, 140 N. Y., and page 936, 35 N. E.:

"If the exercise of certain powers by a foreign corporation in this state would violate our public policy, there is no doubt that the corporation could not here legally exercise such powers, and the fact that it did violate our public policy might in many cases be proved by our statute in regard to our own corporations."

We have thus defined the distinction between an act which assumes to regulate the procedure to enforce a contract and the evidence necessary to prove it and an act which assumes to determine its validity. In the former the law of the state where the contract is sought to be enforced must prevail; but, where the question is as to the validity or interpretation of the contract, the question is not then as to the law of the state in which the contract is sought to be enforced, but the law of the state where the contract was made, and is to be performed. As was said by Lord Brougham in Warrender v. Warrender, 2 Clark & F. 529, "The courts of the country where the question arises resort to the law of the country where the contract was made, not ex comitati, but ex debite justitiæ."

In this action to determine the validity or the interpretation of this contract we must resort to the laws of the state of Massachusetts, and, if this contract is valid by the laws of that state, we must enforce the contract, because the parties to it have entered into a valid and bona fide contract, which imposes an obligation upon them, and which obligation they are bound to perform. The legislature has no more power to deprive a party to this contract of his right under it than it had to declare the contract void. This section of the insurance laws now under consideration does not purport to affect the remedy, nor the evidence to prove the contract. It declares certain contracts made under certain conditions void, not because they are not properly evidenced by a written instrument, but because the contracting parties were not competent to make certain contracts within this state. We have shown that an act attempting to restrain the making of such a contract beyond the jurisdiction of the state is a violation of the federal constitution, and we cannot give to this provision of the statute a construction which would bring it in conflict with the federal constitution. We have examined the authorities cited by the counsel for the appellant, and it is impossible to reconcile them. So far as they are in conflict with Allgeyer v. Louisiana, supra, they must be considered as overruled by that case. There is no evidence in this case that this contract was made with intent to evade the laws of this state, or that this plaintiff had habitually evaded or violated its laws. As we have seen, the parties had a perfect right to make this contract in the state of Massachusetts, and, when made, it was a valid contract. There is no law of this state which either expressly or by implication prevents a valid contract from being enforced between these parties by the courts of this state, and there is nothing to show that it would be against the public policy of this state to enforce such a valid contract when made. The legislature has attempted to regulate the insurance business within this state, and that it has a perfect right to do. But there is no legal declaration or public policy which would justify the courts in refusing to enforce a contract which is valid because the party against whom the contract is sought to be enforced is a resident and the party in whose favor the contract is sought to be enforced is a foreign corporation.

The other points taken by the appellant have been examined, but we do not think that they require discussion. We think that the complaint is sufficient to sustain a recovery in the action. There is no allegation that the contract sued upon is a New York contract, and it is sufficient to prove in the complaint that it was a valid contract, under which the defendant was liable. The assessment made seems to have been in accordance with the laws of Massachusetts, and the action was brought to recover the amount that the defendants were legally liable for under the policy, and we see no reason to doubt the propriety of the judgment appealed from. It follows that the judgment must be affirmed, with costs. All concur.