(41 Misc. Rep. 479.)

BOSTON MANUFACTURERS' MUT. FIRE INS. CO. v. HENDRICKS.

(Supreme Court, Trial Term, Albany County.   October, 1903.)

1. FOREIGN INSURANCE COMPANIES—TAXATION.

Laws 1903, p. 1199, c. 530, requires foreign insurance companies not authorized to do business in the state, but insuring property within it, to pay a tax of 1 per cent. on premiums received.  *Held* not to apply to such a company where it made its contract and collected its premiums within the state of its domicile.

2. SAME—VOLUNTARY PAYMENT.

Payment by a foreign fire insurance company of a tax on its premiums, on a written demand by the Insurance Department therefor, made under protest that the statute was void as to it, but in fear that the state of New York might sue for the tax, as well as the heavy statutory penalty attached for nonpayment, is voluntary, and cannot be recovered by the insurance company.

Action by the Boston Manufacturers' Mutual Fire Insurance Company against Francis Hendricks.  Demurrer, claiming that complaint does not state a cause of action, sustained, and complaint dismissed.

The complaint, in substance, alleges that it is a mutual fire insurance corporation organized under the laws of the state of Massachusetts for the purpose of insuring property against loss or injury by fire, and that its residence and principal place of business is in the city of Boston, in the state of Massachusetts, and that it is not authorized to do business in the state of New York by the Superintendent of the Insurance Department, under the provisions of chapter 690, p. 1930, of the Laws of 1892.

The second paragraph of the complaint alleges:

"(2) That from May 10, 1903, to May 31, 1903, inclusive, the plaintiff, at the said city of Boston, in the state of Massachusetts, did insure property in the state of New York against loss or injury by fire, and did, in said city of Boston, collect and receive premiums for such insurance upon property situated within the state of New York, between May 10, 1903, to May 31, 1903, inclusive, to the amount of $974.40; that, although the property so insured by it was situated in the state of New York, the contracts for insurance thereof were in no instance made in the state of New York, but were wholly made and completed in the state of Massachusetts, and the said premiums were all collected in the state of Massachusetts."

The complaint further alleges that on or about the 1st day of June, 1903, the defendant, claiming to act as Superintendent of the Department of Insurance, pursuant to the provisions of chapter 530, p. 1199, of the Laws of 1903, addressed a circular to the plaintiff, which the plaintiff received through the United States mail in the city of Boston, which circular required the plaintiff to make a report to him, under the oath of its officers, of the details of the insurance aforesaid, and of the premiums collected or received by the plaintiff thereon as aforesaid, and demanded of it, as a tax upon such premiums, the sum of 1 per cent. upon the whole thereof, and the payment of the same to him as a tax on or before July 1, 1903.  The complaint also alleges that while it represented to the defendant that it did not consider that chapter 530, p. 1199, of the Laws of 1903, applied to the insurances made by it, or to the premiums collected by it upon such insurances, and, if it did so apply, it was void, and that to pay such tax would be prohibitive of insurance upon property situated in the state of New York, it nevertheless paid the amount thereof, being the sum of $9.75.  The plaintiff alleges that it paid such sum involuntarily, and was coerced into paying the same by reason of the facts alleged in the complaint, which will be hereinafter referred to.  The complaint demands judgment against the defendant for the said sum of $9.75, with interest from June 30, 1903, and that the defendant be enjoined and

restrained from further vexing the plaintiff with demands for any tax upon premiums upon insurance which may be collected by it outside the state of New York upon insurances made by it outside of said state upon property situated within said state.

The portion of chapter 530 of the Laws of 1903 under which the tax was claimed by the defendant reads as follows:

"Sec. 133a. Every foreign fire insurance company, association and individuals not authorized to do business in this state by the Superintendent of the Insurance Department under the provisions of this chapter, which shall insure any property in this state against loss or injury by fire, shall annually, on or before the first day of July, pay a tax of one per centum on all premiums or assessments collected or received by it or them for such insurance upon property situated within this state, during the preceding year ending on the first day of June, to the Superintendent of the Insurance Department. On or before the first day of July of each year, every such company, association or individual shall file with said superintendent a detailed statement showing the amount of each policy so issued by it or them, and the city, town, village or fire district in which the property covered by such insurance is located, together with such further information as to its business within this state as the Superintendent of the Insurance Department shall require. In case any such company, association, or individuals shall neglect or refuse to make and file such report, or shall neglect or refuse to pay the tax imposed by this section, it or they shall forfeit the sum of one hundred dollars for each day after the first day of July of each year that it or they shall omit to make and file such report or shall neglect to pay the tax imposed by this section, which sum shall be collected in an action in the name of the people of the state of New York to be prosecuted by the superintendent of the insurance department and collected by him.   This section shall not apply to companies issuing policies under section one hundred and thirty-seven of the insurance law."   Page 1200.

Judson S. Landon, for plaintiff.
William H. Wood, Dep. Atty. Gen., for defendant.

HERRICK, J.   That the state has the power to regulate the business of insurance, to say who shall be permitted to carry on such business within the state, and the terms and condition upon which it may be so carried on, and to tax the business of a foreign corporation, insurance or otherwise, doing business in this state by its permission, needs no citation of authorities to substantiate.   But its power and authority are confined to the limits of the state.   City of New York v. McLean, 170 N. Y. 374, 63 N. E. 380.   And its power to tax is limited to persons, property, and business within this state. Dewey v. Des Moines, 173 U. S. 193, 19 Sup. Ct. 379, 43 L. Ed. 665.   The plaintiff cannot be taxed as a person or corporation within this state, because it is incorporated under the laws of Massachusetts, and a corporation, being the mere creature of local law, can have no legal existence beyond the limits of the sovereignty that created it.   Paul v. Virginia, 75 U. S. 168–181, 19 L. Ed. 357.   Its existence may be extended to other sovereignties by comity, but no such extension has been made in this case.   The plaintiff has no permission to do business in this state.   The tax in question here, if sustained, must be sustained as a tax upon business, and upon business done within this state.   The fact that the property insured is located within this state does not render the transaction of insuring it the doing of business within this state, unless such transaction, or some part of it, actually took place here.   Except to pay

losses, the only business in relation to insurance that an insurance corporation and those insuring with it can do is to make the contract of insurance, and pay and receive the premiums. Contracts of insurance are local transactions, and are governed by the local law. Paul v. Virginia, 75 U. S. 168–183, 19 L. Ed. 357; Hooper v. California, 155 U. S. 648–654, 15 Sup. Ct. 207, 39 L. Ed. 297. The business of insurance is transacted or done where the contract of insurance is made. A citizen of the state of New York has the right to insure in the state of Massachusetts property in the state of New York, and there is the correlative right of a corporation in the state of Massachusetts to insure in Massachusetts property in the state of New York, of a citizen of the state of New York. Allgeyer v. Louisiana, 165 U. S. 579, 17 Sup. Ct. 427, 41 L. Ed. 832; Western Mass. Fire Ins. Co. v. Hilton, 42 App. Div. 52, 58 N. Y. Supp. 996. And where the acts which constitute the contract of insurance took place in such other state, the contract is one made within that state. Hyde v. Goodnow, 3 N. Y. 266; Western v. Genesee Mutual Ins. Co., 12 N. Y. 258; Allgeyer v. Louisiana, 165 U. S. 579, 17 Sup. Ct. 427, 41 L. Ed. 832; Western Mass. Fire Ins. Co. v. Hilton, 42 App. Div. 52, 58 N. Y. Supp. 996.

By demurring, the defendant admits all the facts alleged in the complaint, and all the inferences reasonably to be derived from the facts specifically alleged. In the second paragraph of the complaint the plaintiff alleges that the insurance effected by it upon property in this state was made in the state of Massachusetts; that the contracts for insurance were not in any instance made in the state of New York, but were wholly made and completed in the state of Massachusetts; and that the premiums were all collected and received by it in the state of Massachusetts. No contention was made before me that all of the allegations in said paragraph were not allegations of fact, and not of law or conclusions of law; and I therefore assume, as was assumed upon the argument, the truth of the statement alleged in the complaint that the contracts of insurance were, as a matter of fact, made in the state of Massachusetts; that is to say, that the applications were made therefor and the policies issued, and the premiums thereon collected, all in the state of Massachusetts. The business then conducted by this plaintiff was conducted within the state of Massachusetts, and was not taxable under the laws of our state. But the statute which we are considering does not limit the tax to be collected to insurance effected within this state upon property within this state, yet it must be given that construction, and the tax limited to business within the state, because to hold that it applies to business done without the state, or to be a tax upon corporations without this state, would be to say that the Legislature intended to extend its power and authority beyond the limits of the state. Such a construction leads to an absurd conclusion, and also renders the statute unconstitutional, as being beyond the power of the Legislature to enact, and "every reasonable construction must be resorted to to save a statute from unconstitutionality." Hooper v. California, 155 U. S. 648–651, 15 Sup. Ct. 207, 39 L. Ed. 297; People v. Buffalo Fish Co., 164 N. Y.

93, 58 N. E. 34, 52 L. R. A. 803, 79 Am. St. Rep. 622. It must be, therefore, held that the act in question applies only to insurance effected within this state, and the defendant was not, therefore, authorized to collect and receive from the plaintiff the tax in question.

But such tax having been paid, the question arises as to whether it can be recovered back. The plaintiff claims that such payment was involuntary, and that it was coerced into its payment; and its claim of coercion, based upon its allegations in the complaint, is that, so long as the question as to whether such law was applicable to it remained undetermined by the final judgment of a competent court, the said chapter, and said claim of or assertion by the defendant of its application to the plaintiff in respect to plaintiff's liability for the said tax, and also for the penalties in case of one or more day's neglect to pay the same after July 1, 1903, would, so long as "the defendant made such claim, subject the plaintiff to great and irreparable loss: First. Because, in the usual course of the plaintiff's business, about ninety per centum of the premiums are returned to its patrons, and thus the tax of one per centum is in fact ten per centum upon the actual premiums returned, and thus the increased cost of insurance to its patrons occasioned by this tax would be prohibitive of insuring of their property in the state of New York. Second. The duress by plaintiff's alleged liability for the penalty of one hundred dollars per day would be too great for endurance, if, in order to test its liability, it should refuse to pay the tax during the time which would probably elapse before final judgment should be reached in any action the defendant might institute against the plaintiff." That the neglect to pay the alleged tax of each successive year gives rise to another like action, and that, by the provisions of section 384 of the Code of Civil Procedure, two years' time is given within which to commence an action upon a statute for penalties to the people; thus permitting alleged penalties to cumulate to about $70,000 before action need be brought. And it was the fear of this possible accumulation of penalties that constituted the duress in this case, and, to avoid this, the plaintiff paid the sum of money which it now seeks to recover. In addition, it was urged upon the argument that an action might be brought against the plaintiff within this state by service upon any of its officers who at any time should be found within this state, and, if a judgment was obtained thereupon, such judgment could be enforced in the state of Massachusetts by appropriate action thereon. As to this latter, I have only to observe that the plaintiff asserted before paying the tax that the act in question did not apply to it, and, if the Legislature did so intend it to apply, that then it was unconstitutional and void, and it is now here held that it was right in that contention; and it is to be presumed that if any action is brought to recover the tax and the penalties, as suggested by the very learned counsel for the plaintiff upon the argument herein, the court before which such action is brought to trial will also hold the statute not to be applicable to the plaintiff, for the legal presumption is "that every court will decide right, and conduct the proceed-

ings before it fairly, impartially, and correctly." Wolfe v. Burke, 56 N. Y. 115.

It remains to be seen as to whether the allegations in the complaint in regard to the payment being coerced, with all the inferences reasonably to be derived from such allegations, constitute the payment an involuntary payment. The general rule is that where money has been voluntarily paid to a person authorized to receive it, if collectible, upon a claim of right, where there is no misrepresentation or mistake of any fact, it cannot be recovered back. New York & Harlem R. Co. v. Marsh, 12 N. Y. 308. There is no claim that there was any misrepresentation or mistake of any fact in this case. To entitle the plaintiff to recover back the money paid, it must appear that such payment was involuntary; that is, that it was paid under coercion of law or of fact. Coercion of law may be where a court having jurisdiction of the person or subject-matter has rendered judgment which is collectible in due course. To that may be added those quasi adjudications of inferior tribunals, such as assessors of taxes or assessments, where their proceedings are regular upon their face, and on presentation make out a right to have and demand the amount levied, and to collect it in due course of law by sale of the goods, or lease of the real estate. Unless void upon their face, they have the force of judgments. The party is legally bound to pay, and has no lawful mode of resisting. The only remedy is by a reversal of the adjudications. To warrant an action to recover back money paid by coercion of law upon a judgment, or a tax levied, or an assessment laid, it must appear that the judgment or proceeding was prima facie regular, so as not of itself to furnish evidence of its invalidity. Coercion in fact may be by duress of person or goods, where present liberty of person or immediate possession of goods is so needful and desirable as that an action or proceeding at law to recover them will not at all answer the pressing purpose. Peyser v. Mayor, 70 N. Y. 497, 26 Am. Rep. 624. "Where there is compulsion, actual, present, potential, in inducing that payment by force of process available for instant seizure of person or property, and the demand is really illegal, then the party, by giving notice of the illegality and of his involuntary payment, can recover back the money so paid, in an action brought for that purpose." United States Trust Co. v. Mayor, 77 Hun, 182–191, 28 N. Y. Supp. 344. Coercion in fact would be exemplified in some duress of the person or goods, and coercion by law would exist if a warrant was out for the collection of an assessment, or where such proceedings had been taken under the charter of the municipality as should or could result in the enforcement and realization of the assessment. Vaughn v. Village of Port Chester, 135 N. Y. 460, 32 N. E. 137. It has been said that persons dealing with public officers and their deputies and agents do not stand with them upon equal ground, and that the due protection of those whose necessities require them to deal with persons exercising official powers, or discharging duties in their nature official, require that moneys paid to them upon an illegal demand should be subject to reclama-

tion.  And in a case of examiners appointed by the Comptroller of
the state to ascertain whether the necessary amount of capital had
been paid in by an insurance company to enable it to transact busi-
ness, and who required the payment of more than their legal fees,
or they should notify the Comptroller not to issue a license to it,
thus preventing the company from doing business, it was held that a
payment made under such circumstances was an involuntary pay-
ment, and could be recovered.  American Exchange Fire Ins. Co.
v. Britton, 8 Bosw. 148.  And in a case where illegal payments were
made under a ruling of the Revenue Department, and, in default
of their being made, no revenue stamps would be delivered, and with-
out such stamps the party paying could not continue business, such
payments were held to be coerced.  Swift Co. v. United States, 111
U. S. 22, 4 Sup. Ct. 244, 28 L. Ed. 341.  The cases in relation to
voluntary and involuntary payments are infinite in their number.
I have cited these few, out of the very large number examined, as il-
lustrations, not only of the principle, but of the facts upon which
such principle has been applied; and neither the principle, nor any
of the adjudicated cases that I have found, or that have been cited
to me, seems to me applicable to the state of facts now under con-
sideration.  There is in this case no duress of person, property, or
business.  So far as the record shows, it has neither business nor
property within this state; hence there was and is no means of en-
forcing collection of the tax, and no steps have been taken to en-
force it.  Neither was there any coercion by business necessities, as
in the cases of American Exchange Fire Ins. Co. v. Britton, supra,
and Swift Co. v. United States, supra.  The business it was doing
of insuring property within this state, it had a right to do without
permission from or under the control of our state authorities.  All-
geyer v. Louisiana, supra; Western Mass. Fire Ins. Co. v. Hilton,
supra.  And it was not seeking permission to do business within
this state.  So that there was and could be no coercion either in
law or fact, by official action, either in regard to any past transac-
tion, because what it had done it had done as matter of right, or in
regard to the future, because it was seeking no favors or privileges
from the authorities of this state.

In addition to these considerations, it is to be observed that the
act in question, when tested by the Constitution of the United States,
and by the law of the land as to the interpretation of statutes and
constitutions, is illegal upon its face, if sought to be applied to a cor-
poration situated and doing business within another state, and not
within this state, and can only be upheld when confined to business
done within this state, and that is apparent from reading the statute
itself.

There is no coercion of law for the payment of a tax or assess-
ment which upon its face carries notice of its illegality, or, if valid
upon its face, where the person paying has knowledge of extrinsic
facts which render it illegal.  New v. Village of New Rochelle, 91
Hun, 214, 36 N. Y. Supp. 211; Phelps v. Mayor, 112 N. Y. 216,
19 N. E. 408, 2 L. R. A. 626; Tripler v. Mayor, 125 N. Y. 617, 26

N. E. 721. Here the plaintiff, with, it appears, knowledge of the law, and knowledge of the fact that its business was transacted within the state of Massachusetts, beyond the authority of the state of New York, paid the tax for fear that at some future time it might be prosecuted to recover the penalties incurred for not paying, and that such prosecution might be deferred until the aggregate of the penalties became very great, and that the court before whom such action was brought might render judgment against it for such accumulated penalties. I have been referred to no case, neither have I been able to find any, holding that a payment made in fear of a possible future action, and possible adverse decision of such action, constitutes such payment a coerced or involuntary payment. If the company intended to litigate the right of the defendant to exact the payment of the tax, it was bound to take that position, and resist the payment. Flower v. Lance, 59 N. Y. 603–610. The protest made at the time of payment did not affect the question of its being a voluntary or involuntary payment. "Where the payment is voluntary, * * * a protest, with notice of an intent to reclaim, is not sufficient to sustain a recovery. The voluntary character of the payment still remains, notwithstanding the notice, and is fatal to the action." United States Trust Co. v. Mayor, 77 Hun, 182–191, 28 N. Y. Supp. 344; Flower v. Lance, 59 N. Y. 610.

For these reasons, it seems to me that the payment to the defendant by the plaintiff was a voluntary payment, and cannot be reclaimed. It follows, therefore, that judgment must be rendered for the defendant upon the demurrer, and the complaint dismissed.

Judgment for defendant upon demurrer, and complaint dismissed.