The People ex rel. Nathan B. Warren et al., Respondents, *v.* Edward Carter et. al., Appellants.

Where, in proceedings under the act of 1880 (Chap. 269, Laws of 1880) to reduce an assessment on real estate for the year 1887, it appeared that in 1885 and 1886, the assessors had assessed the land at the same sum, that in similar proceedings in each of those years, there had been a judicial determination fixing the actual value, and that the prior assessment had been reduced to the sum so fixed. *Held*, that in the absence of evidence of an increase of value or of some change affecting the assessable value, the doctrine of *res adjudicata* applied, and the former adjudications were binding and conclusive.

After the writ of certiorari was issued, the assessment-roll having been placed in the hands of the proper officer for collection, the relators paid the taxes imposed upon the property, leaving, however, with the officer a writing, stating that the taxes were paid under protest, for the reason that the assessment was excessive, and that for the correction thereof proceedings were then pending. *Held*, that in the absence of any evidence as to the circumstances under which the payment was made, the presumption was, that the payment was involuntary, and so, did not estop the relators.

*It seems*, where one pays, under protest, taxes based upon an assessment, not void, but simply excessive, and gives notice of his intention to review and correct the same in proceedings then pending for that purpose, and that he intends to reserve, not to waive or abandon, his proceedings, such a payment may not be set up as a bar to the further prosecution of the proceedings.

(Argued March 10, 1890; decided March 18, 1890.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made September 10, 1889, which affirmed a judgment in favor of the relators entered upon a decision of the court on trial at Special Term.

This was a proceeding, by certiorari, under the act, chapter 269, Laws of 1880, to review an assessment.

The material facts are stated in the opinion.

*R. A. Parmenter* for appellants. It is now perfectly well settled that chapter 269, Laws of 1880, " giving a remedy by certiorari to review and correct an illegal or excessive assess-

ment," does not permit a party complaining of an assessment who has omitted to avail himself of the opportunity provided by statute to remedy his grievance, after the assessment has been confirmed by a lapse of time, to arrest the collection of the tax by a proceeding under said act. (*People ex rel.* v. *Comrs.*, etc., 99 N. Y. 254, 257 ; *People ex rel.* v. *Bd. of Assrs.*, 45 Hun, 243 ; *People* v. *W. S. Bank*, 39 id. 524, 530 ; Fiero on Spec. Proc. 150 ; 1 R. S. [Edm. ed.] 365, 366, §§ 19, 20 ; 3 id. 350.) The voluntary payment by the relators of the tax against the property known as "River View," was a waiver on their part of the right to prosecute this writ of certiorari. (*Bruecher* v. *Port Chester*, 101 N. Y. 240, 244.) The decision of the court below reducing the valuation of the "River View" property is not *res adjudicata* as to the assessors acting as sworn public officers for the year 1887, they being required to verify their official acts by their personal oaths. (*Stowell* v. *Chamberlain*, 60 N. Y. 272 ; *Smith* v. *Smith*, 79 id. 634.)

*G. B. Wellington* for respondents. This court, in these proceedings, cannot review disputed questions of fact. (*People ex rel.* v. *Hicks*, 105 N. Y. 200.)

Earl, J. This proceeding was instituted by the relators under chapter 269 of the Laws of 1880, to review an assessment made by the assessors of the city of Troy for the year 1887 upon their property in that city known as "River View," which had been assessed at $60,500. The assessors had in each of the years 1885 and 1886 assessed the property at the same sum, and by proceedings instituted in each of those years, under the same act, the relators had procured a judicial determination that the actual value of the property is $40,000, and that the assessment should be reduced to that sum. That adjudication was binding upon these defendants. In the year 1887 the assessors professed to act upon the statutory rule of assessing all real estate in the city at its actual value, and they had no right to assess the property in question at any greater value than $40,000 unless it was worth more.

Upon the trial of this matter the relator produced the records in the prior proceedings, and then gave evidence tending to show that there had been no change in the value of the property, and that it was not worth to exceed $40,000. The defendants gave evidence controverting the value claimed by the relators, and tending to show that the property was worth the sum of $60,500. The court at Special Term found that the actual value of the property was but $40,000.

The adjudications made in 1885 and 1886 were binding and conclusive upon the parties thereto as to the value of the property in those years, and unless there was an increase in its value subsequent to those adjudications and before the assessment in 1887, or some change affecting its assessable value, the court at Special Term committed no error in giving those adjudications conclusive effect between the parties. The fact that some of the assessors had received new terms of office was unimportant. The offices and the officers were the same, and we see no reason to doubt that the doctrine of *res adjudicata* should apply to such a case so far as above indicated.

The objection is made that the relators did not appear before the assessors on what is called the " grievance " day and asked to have the assessment corrected; but they allege in their petition that they did appear before the assessors on that day, and requested that the assessment be reduced to $40,000, as determined by the previous adjudications, and that the assessors refused to reduce the same; and this allegation in the petition is not denied or put in issue by the return, and must, therefore, be taken as admitted.

After the writ of certiorari was issued and the proceedings were thus pending, and after the assessment-roll as amended and corrected had been placed in the hands of the city chamberlain for collection, on the 15th of October, 1887, the relators paid the taxes imposed upon the property in question. But at the time of such payment they served upon the chamberlain, and left with him, a written protest stating that the taxes were paid under protest, " for the reason that the assess-

**560**     PEOPLE ex rel. WARREN et al. *v.* CARTER et al. [Mar.,

Opinion of the Court, per EARL, J.

ment against said pieces of property are illegal, excessive and unequal, for the correction of which proceedings are now pending in the Supreme Court." The evidence does not disclose how the relators came at that time to make the payment. We cannot assume, in the absence of any proof, that the payment was voluntary; but we may assume that it was under the stress of some compulsion, and that thus it was involuntary within the meaning of *Bruecher* v. *Village of Port Chester* (101 N. Y. 240). Where, however, one pays taxes imposed under an assessment which is not void, but simply excessive, and unequal, and gives notice of his proceedings to review and correct the same, thus indicating that he intends to reserve his rights and does not intend to waive or abandon his proceedings, we know of no principle of law upon which such a payment under protest can be set up as a bar to the further prosecution of the proceedings. By such payment he waives no rights, and he does no wrong and creates no embarrassment to the municipality or officer taking his money, and he cannot be estopped thereby. Section 2 of the act, chapter 269, provides that the writ of certiorari allowed under that act shall not stay the proceedings of the public officers connected with the assessment or collection of the taxes; and hence, it would be extremely unjust to hold that in case the tax, which can be enforced against the tax-payer, shall be paid, he shall lose his remedy under the act.

In section 8 of the act, it is provided that in case the assessment shall be reduced by judgment in the proceedings, "then there shall be audited and allowed to the petitioner and included in the next year's tax levy of said town, village or city, and paid to the petitioner the amount, with interest thereon, from the date of payment, in excess of what the tax should have been as determined by such judgment or order of the court." The judgment in this proceeding provides that the assessment shall be reduced to $40,000, and that there should be audited and allowed to the relators the amount of taxes paid upon the erroneous assessment, with interest from the date of payment; and that judgment is in strict con-

formity with the statute, and is not subject to any just complaint.

We are, therefore, of opinion that the judgment should be affirmed with costs.

All concur, except R<small>UGER</small>, Ch. J., dissenting.

Judgment affirmed.