TRUSTEES OF THE ESTATE OF MARTIN FLYNN, Appellants, v. BOARD OF REVIEW of the city of Des Moines, Appellees.

No. 44072.

1354

MARCH 15, 1938.

OPINION ON REHEARING JUNE 20, 1939.

Kelly, Shuttleworth & McManus, J. R. McManus, L. W. Powers, and M. H. Johnson, for appellants.

Vernon R. Seeburger, Ronald L. Ryan, Chas. Hutchinson, Carl Burkman, and F. T. Van Liew, for appellees.

HALE, J.—This case was originally determined in an opinion filed March 15, 1938, 278 N. W. 342. Petition for rehearing was granted and the matter is now before us for consideration.

The property involved is what is known as the Flynn building, located at the southeast corner of Locust and Seventh streets in the city of Des Moines. It is a tract 66 feet east and west on Locust street, and running back 132 feet on Seventh street to the east-and-west alley. On this tract is constructed a six-story building, the lower floor of which is occupied by stores and the other floors are used as shops and offices. Locust street is one of the principal business streets of the city, and Seventh is also a street in the principal retail district of the city of Des Moines. On the southwest corner of block 12, in which the Flynn building is located, and at the northeast intersection of Walnut and Seventh streets, is what is known as the "key" property, variously called the Kraft building and the Kresge building. This is supposed to be the heart of the retail business district of Des Moines.

The valuation placed upon the Flynn tract as of January 1, 1933, was $325,622. From this assessment the plaintiffs appealed to the district court and on trial the assessment was reduced to $319,022. From the decree of the district court the plaintiffs have appealed to this court. The board of review also appealed, but this appeal has been abandoned and need not be considered here.

Plaintiffs devote considerable of their argument to an expression used in the original opinion, claiming that it is contrary to the views of this court as expressed in previous decisions. The statement was there made that there can be no claim in this appeal that the property was assessed in excess of its actual

value, as the record discloses that the actual value exceeded the assessed valuation. We cannot interpret this statement in the opinion as do the plaintiffs, that it tends to establish any departure from our former holdings. It is a mere statement of fact and in no way lays down the rule that is suggested by the argument of counsel. It did not mean, nor do we think it can be held to mean, that if it appears from the record that the actual value of the property exceeded the assessed valuation this court will not inquire into what the facts are or consider the evidence as to whether such actual value as fixed by the assessor in the first instance was correct.

Under the provisions of section 7109 of the Code of 1931:

"All property subject to taxation shall be valued at its actual value * * *. In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; and the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, or inequitable."

In determining values it is the duty of the assessor to fix such values equitably in comparison with other like property. Under our laws property cannot be assessed at more than its actual value and cannot be assessed inequitably as compared to other property. It has consistently been held by this court, as in the case of Iowa Cent. R. Co. v. Board, 176 Iowa 131, 134, 157 N. W. 731, 732, that:

"The paramount object which the law seeks to insure in distributing the burdens of taxation is equality; and, although the property of a taxpayer is assessed at less than its true value, nevertheless, if it is assessed higher proportionately than other property, he has a just cause of complaint. It is hardly necessary to cite authorities upon this proposition, but see Burnham v. Barber, 70 Iowa 87, 30 N. W. 20; Barz v. Board of Equalization, 133 Iowa 563, 111 N. W. 41; Reiniger v. Board of Review, 157 Iowa 193, 138 N. W. 399."

To the same effect, see Chapman Bros. v. Board of Review, 209 Iowa 304, 228 N. W. 28.

It is clear that the question at issue is a question of

fact. There cannot be much controversy about the legal aspects of the case. The law upon the various questions involved in such disputes as this has been frequently determined, but always there has been and always there will be difference of opinion as to values. Nearly every person called upon to appraise property, especially improved property, approaches the task with ideas based largely upon experience, occupation, and training. Honest minds will necessarily differ on values, and exact equality, though eminently desirable, is impossible of attainment. The presumption is that the valuation placed by the assessor upon any particular property is correct, and the burden of proof is upon the person challenging that estimate. It is so made by statute (section 7109, Code, 1931) and such has been the uniform holding of this court. Butler v. City of Des Moines, 219 Iowa 956, 258 N. W. 755; Sioux City Bridge Co. v. Board of Review, 192 Iowa 1224, 184 N. W. 733; Talbott v. City of Des Moines, 218 Iowa 1397, 257 N. W. 393; In re Appeal of Blank, 214 Iowa 863, 243 N. W. 173. This does not mean, of course, that the opinion of the assessor is conclusive, but, when properly based and apparently not erroneous or excessive or out of proportion, it is to be held as the true value of the property. See Butler v. City of Des Moines, supra.

■ It is obvious that in fixing values in a business district such as the one in question, the first duty of an assessor is to endeavor to arrive at the true value of the property. We realize that this is difficult. There are so many factors that must be taken into consideration that the fixing of a fair proportionate valuation is a serious problem; and it is also true that cases involving such valuations are among the most troublesome and vexatious that come into the courts. However, once having determined the actual value and the equitable valuation of the property proportionately with other properties of the district, the value for tax purposes is determined by the 60 per cent rule. In the case at bar the assessor worked under certain rules in a system, which system was supposed to give the approximate percentages affecting the value of the property in the district. As to the land values, after consultation with a number of persons supposed to be acquainted with the valuations throughout the business district, there was first fixed a key property at the corner of Sixth avenue and Walnut street; and afterwards the key property was fixed at the corner of Seventh and Walnut

streets—the Kresge property before referred to. Estimating this property and its valuation at 100 per cent, other properties were valued in proportion to their distance from this supposed business center, on a front-foot valuation. In devising the formula there were also taken into consideration the effects of other conditions, among them corner influence, the depth of the property, the influence of the alley, the ownership, whether in one person or divided among several, etc. The various influences and variations were combined into mathematical formulae and from them was derived the actual value of the real estate. The value of the building on a tract was determined to a great extent by the cubic content, the different values per cubic foot varying according to the type of construction. In determining the ground value of any tract its valuation was fixed at some certain percentage of the front-foot value of the key tract. Other matters taken into consideration were the trend of business in the neighborhood, the amount of pedestrian traffic, and the kinds of business in the vicinity. To the value of the land as fixed by these various formulae and percentages was added the value of the building estimated in the manner described, and the sum of these two values was supposed to be the actual value of the property. Elements other than those mentioned here were taken into consideration, but the general system of valuation was based upon these formulae, the object being to produce a fair proportionate valuation among the various properties within the same neighborhood.

The system referred to, if properly applied and if all elements necessary to be considered were so considered, would probably furnish a fair basis for comparison. It would not do, however, to follow blindly any method or any combination of methods without proper consideration of their limitations, and taking into the estimate factors not apparently considered by the assessor who made the valuation in question.

■ The statute requires that production shall be considered. It is earnestly charged by the plaintiffs that this was not taken into consideration, and the assessor so testified in part of his examination, which testimony he later qualified. While the statute requires that the productive and earning capacity, past, present, and prospective, must be taken into consideration, yet this alone, of course, cannot be a true guide. Whether gross or not, such receipts are controlled by many factors. The con-

dition of the property, its proximity to other business, the nature of the surroundings, the availability of the property for special occupations, are elements that must be considered; and productive value, while an element, is only one of several factors necessary to be taken into consideration in determining value. And so with each of the factors entering into the equation. The front-foot valuation, while determined by proximity to the key property, is open to many variations—the condition and grade of the streets, the trend of business toward or from the assessed property, and so on. The combination of all factors that enter into valuation will, in many cases, approximate the true value. And in addition there must be the element of judgment which can properly estimate and determine the influence of each and all of these various factors, so that a rule of valuation placed upon mathematical formulae alone could never be an infallible guide. See In re Appeal of Blank, supra.

The defendant maintains that the system used by the assessor in Des Moines has had the sanction of the supreme court, and cites the case of Butler v. City of Des Moines, supra. We do not so read the case. This action was brought by the owner of the property just one block east of the Flynn block, with the same relative position as to other properties in the block as the Flynn building occupies in block 12, and, while the opinion refers to the system in use by the assessor, it neither expresses approval nor disapproval of any particular system, the case merely holding that the evidence in regard to valuation of that particular property was insufficient to overcome the presumption of correctness in the assessor's ratings.

█ It appears that after the fixing by the assessor of the Kresge corner as the key corner upon which, in descending percentages, valuations of the surrounding real estate were made on a front-foot basis, the owner of the key property, whose Walnut street frontage was valued at $6,500 per foot, on appeal to the state board of assessment and review secured a reduction to $6,000 per front foot; and it is now urged that this carried with it a corresponding percentage reduction in the front-foot valuation of all the surrounding property. We are not prepared to say that this result necessarily follows. Upon a purely mathematical basis, and if the evidence showed that front-foot valuations were made solely on the valuation of the Walnut street front of the Kresge property, it might necessarily follow that

the other valuations should be reduced accordingly. But it is not clear from the evidence that such was the case,—that is, that, disregarding all other factors, the valuation of the Seventh street frontage of the Flynn block was so fixed solely on account of the proximity of the Kresge building and solely on a proportionate basis with the valuation of the Walnut street frontage of the key property. No doubt this was taken into consideration, but we do not discover from the evidence that this was the sole measure as to land values. We cannot say that the reduction of $500 per front foot on Walnut street by the state board of assessment and review necessarily calls for a corresponding percentage reduction in the frontage of the Flynn block on Seventh street. We must not overlook the fact that the reduction by the state board applied to the Walnut street frontage only, and that no change was made in the Seventh street valuation per front foot of the same property.

The Flynn building was constructed in 1885. Compared with other buildings in the business section of the city it is not modern. It is not equipped to furnish heat to its tenants, but heat is supplied from a neighboring building. It is not of fireproof construction. It was at the time of the assessment occupied by a drug business, at a lease very advantageous to the owners. The income has varied from year to year, but the reports of the trustees of the estate, which were introduced in evidence, do not indicate that the net income is very large for a property the actual value of which has been estimated by the assessor at a half million dollars. The net income has been affected at times by necessary repairs and other expenses. The net income varied. In some years it was greater, and in others less. Of course, the productive value alone cannot be taken as a basis for valuation of the property, but it must be considered in connection with other elements which go towards the fixing of valuations.

In 1931 the assessment as of January 1 of that year was fixed at $365,052 for the land and $87,600 for the building, making a total of $452,652. On appeal to the district court this assessment was reduced, without specifying in the decree the amount of reduction on either land or building but a reduction on the whole to $362,122. On December 22, 1932, prior to the time of the assessment for the year 1933, the state board of assessment and review sent out a letter to all assessors in which

it stated that, for the purpose of equalizing real estate valuations in the state, they recommended a 20 per cent reduction on the values in 1931. Their reasons therefor were that there had been a general decrease in valuations in the state during the past two years of at least one fifth. They therefore recommended that in all communities which had been assessed and equalized two years before upon a general basis of assessment of 60 per cent of the actual value the new assessment should be 20 per cent less. The letter went on to say that if the assessments in 1931 were lower than the 60 per cent base, the assessor would not be justified in making such reduction. It appears, however, that this had been the base for valuations in Des Moines for some time. When it was indicated that the assessor in the taxing district contemplated making only an average reduction of 18 per cent, the city council also recommended that the valuations be reduced in compliance with the direction and request of the state board, as the state board, under the provisions of section 6943-c27 of the Code of 1931, has as one of its duties to exercise supervision over the administration of the tax list and to advise with taxing officials and aid in securing equitable and just enforcement of the tax list. The assessor undertook to and did reduce the valuations. His testimony shows that a general reduction was made of 27.7 per cent. However, the reduction on the Flynn property amounted to only 10.08 per cent for the assessment as of January 1, 1933. A comparison with other assessments and the reductions therefrom, together with the values made by the district court on other properties, indicate that the Flynn property did not receive the full benefit of the order of the state board, and the reductions made by the assessor following and in compliance with such order. While it is true that no two properties in the ordinary business district can be said to be exactly the same as to valuation, yet a comparison of the Flynn block with other similar properties similarly situated indicates that this, as well as other properties in the vicinity, should have been entitled to the full 20 per cent reduction recommended by the board and the city council, and acted upon in many cases by the assessor. We believe that from the 1933 taxable valuation the plaintiffs are entitled to a further reduction in order to give them the benefit of the 20 per cent reduction enjoyed by similar properties, and which seems to have been the reduction made in various properties in

the neighborhood by the district court on appeal. A general reduction for each individual property was not suggested by the state board, nor did all properties in the district receive such allowance by the assessor—some were given more and some less.

■■ The valuation in 1931 on appeal was fixed as above stated at $362,122. This value, as fixed by the court, was acquiesced in by all parties and neither appealed. It may be considered, and in view of all the evidence we do consider it, as fixing the fair assessable value in 1931. It is true that the assessment for each year is separate and based on a separate valuation. Nor can an adjudication for one year definitely fix the value for succeeding years. In re Assessment of Stock in Sioux City Stock Yards Co., 223 Iowa 1066, 274 N. W. 17. But there is no reason to believe, nor is there anything in the evidence to indicate, that this property, taking into consideration its productiveness, and all other matters that must be considered in fixing its value, was to any considerable degree different in value in 1931 and 1933—but rather, the evidence indicates the contrary. Considering all the evidence, we think as fair a valuation as can be made would be to fix its value at $362,122, less the full 20 per cent reduction, instead of the reduction of 10.08 per cent allowed by the assessor.

■ Plaintiffs urge that they are entitled to a further reduction under chapter 244, special acts of the Forty-fourth General Assembly. But that chapter does not apply to the situation here, but merely provides for a reduction in *rates* for the years 1931 and 1932.

In coming to the conclusion herein set out, we do not overlook the testimony of certain experts in whose opinion the property was of a much lower value than that fixed by the assessor. We do not find their testimony uncontradicted, and in view of all the testimony we do not feel that we should be guided solely by this opinion evidence. Nor have we failed to give due allowance to the work and study that have been given to the various assessments by the assessing officers; but we feel compelled, in view of all the evidence, to fix the value as of January 1, 1933, at $289,698.

We have not undertaken to review all the questions raised in the consideration of this very difficult problem. The consti-

tutional question raised, in view of our holding, we do not consider it necessary to discuss.

The former opinion in this case, appearing in 278 N. W., at page 342, is withdrawn, and the foregoing substituted therefor.

The decree of the district court is, therefore, reversed as to the valuation placed upon the property, and the cause is remanded for a decree in conformity with this opinion.—Reversed and remanded.

HAMILTON, SAGER, BLISS, and MILLER, JJ., concur.