[No. 28206. Department One. January 15, 1942.]

BELLINGHAM COMMUNITY HOTEL COMPANY, INC., *Appellant*, v. WHATCOM COUNTY *et al., Respondents.*[1]

[1]Reported in 121 P. (2d) 335.

238

*Abrams & McCush,* for appellant.

*Edward E. Johnson* and *F. M. Hamilton,* for respondents.

DRIVER, J.—In January, 1935, the Bellingham Community Hotel Company, Inc., the owner of the Bellingham hotel, brought an action against Whatcom county and its treasurer for reduction of the assessments on the property for the years 1933, 1934, and 1935. In *Bellingham Community Hotel Co. v. Whatcom County,* 190 Wash. 609, 70 P. (2d) 301, this court affirmed a judgment of the superior court, in favor of the plaintiff, substantially reducing the assessed valuations for the stated years. In October, 1937, the hotel company brought the present action to obtain a reduction of the assessed valuation of $194,680 ($97,340 on a fifty per cent basis) placed on the property by the county assessor for the years 1936 and 1937 and to recover back

that portion of the 1936 taxes claimed to be excessive and paid under protest. A trial to the court resulted in a judgment of dismissal, from which the plaintiff appealed.

At the outset, we are met by appellant's contention that the judgment in its prior action is *res judicata* in this one. The determination of assessed valuation, in that case, for the year 1934, appellant urges, was conclusive and binding upon the county assessor, and he should have adopted it as his valuation for the year 1936 unless, in the meantime, there had been some change in the property materially affecting its value.

▉▉▉ Chapter 130, Laws of 1925, Ex. Ses., p. 234, § 8, Rem. Rev. Stat., § 11112 [P. C. § 6882-8], the governing statute in effect at the time the assessments in question were made, provided:

"All real property in this state subject to taxation shall be listed and assessed under the provisions of this act in every even numbered year, with reference to its value on the first day of March of the year in which it is assessed. All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of March in the year in which it is assessed: . . . "

Manifestly, the statute contemplated that real property should be assessed in the even-numbered year and reassessed in every succeeding even-numbered year with reference to its value on March 1st of the year in which it was assessed. The valuation of appellant's property for the year 1934, as fixed by the court in the prior action, became the assessed valuation to be used as the basis for tax levies for that year, and, of course, for the next succeeding odd-numbered year of 1935. It did not, however, become the valuation for the year 1936, and, as to such year, the former adjudication of value was not binding upon either the county assessor or the trial court in the instant case.

In a discussion of *res judicata* in tax proceedings, it is stated in 34 C. J. 966, § 1381:

"The doctrine of res judicata applies as well to tax proceedings as to ordinary litigation between individuals. Hence a judgment in such proceedings is conclusive as to matters actually or necessarily determined; and, if the same taxes were involved, is also conclusive as to matters which might have been litigated and decided. But the rule that a judgment is not conclusive in a subsequent suit on a different cause of action as to matters not in issue applies to tax proceedings, and a judgment in such proceedings is not conclusive in a subsequent action to recover taxes for a succeeding year as to matters which might have been, but were not, litigated and determined; *nor is it conclusive as to the validity of a new assessment or reassessment superseding the original assessment.*" (Italics ours.)

A footnote cites the following Washington cases in support of the italicized portion of the foregoing text: *Johnson v. Seattle*, 53 Wash. 564, 102 Pac. 448; *Allen v. Bellingham*, 77 Wash. 469, 137 Pac. 1016; *East Hoquiam Co. v. Hoquiam*, 90 Wash. 210, 155 Pac. 754; *Kuehl v. Edmonds*, 91 Wash. 195, 157 Pac. 850. None of the cited cases is based upon a factual situation, such as we have here, but they are all generally analogous. They hold that a judgment declaring the validity or invalidity of city local improvement assessments is not *res judicata* upon a subsequent action pertaining to the reassessment of the same property.

No cases directly supporting appellant's theory of *res judicata* have been brought to our attention with the exception of the following decisions of the New York courts: *People ex rel. Warren v. Carter*, 119 N. Y. 557, 23 N. E. 926; *In re Rosenbloom*, 254 App. Div. 638, 3 N. Y. S. (2d) 261; *In re Bloch*, 254 App. Div. 636, 3 N. Y. S. (2d) 260; *In re Mitchell*, 254 App. Div. 637, 3 N. Y. S. (2d) 262.

The New York court of appeals distinguished and qualified the first of the cited cases and definitely overruled the other three in *People ex rel. Hilton v. Fahrenkopf*, 279 N. Y. 49, 17 N. E. (2d) 765. The court held that an order, in a certiorari proceeding, fixing the valuation of certain real property for taxation purposes was not *res judicata* in a later certiorari proceeding to determine the valuation of the same property for the next ensuing tax year. We quote from the opinion as follows:

"It is of the essence of an assessment that it fixes value as of a certain time. Each annual proceeding is separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll (Tax Law, § 28). From these considerations it results that a prior judicial determination of value does not legally bind successor assessors."

In any event, appellant asserts, the adjudication of the value of the real property in its former case was evidence of the value for the succeeding assessment year, and should have been accorded great weight by the trial court in the present action. In support of this assertion, appellant cites *People ex rel. Hilton v. Fahrenkopf, supra,* and other cases of the New York courts. The trial court admitted in evidence all the records and files in the prior suit offered by appellant, and the question of their admissibility, therefore, is not involved in the case at bar. The former adjudication, apparently, was not accorded much probative weight, it is true, but, for that, the lower court had what we regard as a sound and sufficient reason, which was stated in its memorandum opinion as follows:

"That the determination of the value by the Court cannot in any event be lightly cast aside is plaintiff's second and alternative view of the effect of the previous decision. However, a careful reading of the

decision of the lower Court, as shown in the Memoranda of the Court in Plaintiff's Exhibit 'A' (the file of cause No. 23158, Whatcom County, the same case settled on appeal in 190 Wash. 609) indicates that the decision rested upon the conclusion that the value placed upon the building by the county was computed upon a fundamentally wrong basis (page 5 of the Memoranda). The basis used by the county was so inadequate, and the methods of the witnesses for the respective parties so different as to cause the Court to conclude that there was no conflict in the evidence (page 6 of the Memoranda). The Findings of Fact (V.I) and Conclusions of Law (I) support this analysis of the case as viewed by the trial Judge. The Supreme Court used the same basis of decision (190 Wash. at page 612) in affirming the decision of the lower court. The factors of value considered by the county were said to be inadequate. Being inadequate and the valuation being on a fundamentally wrong basis, there was no evidence submitted by the county to sustain the findings of its own officer of the ultimate fact of the case, i. e., the value of the property."

We come now to the question whether, aside from the adjudication of value in the former case, appellant was entitled to reduction of the assessments of its property for the years 1936 and 1937.

Chapter 130, Laws. of 1925, Ex. Ses., p. 259, § 52, Rem. Rev. Stat., § 11135 [P. C. § 6882-52], in effect when the assessments were made, provided that property should be valued for taxation purposes as follows:

"All property shall be assessed fifty per cent of its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such price

as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor. . . . "

The law has entrusted to certain public officers the task of evaluating property in the process of taxation. Cash value, the criterion prescribed by the cited statute, cannot be ascertained exactly, but is largely a matter of opinion. So long as an assessing officer exercises his honest judgment, in the matter of fixing value, a court will not, as a rule, interfere and substitute its own opinion or judgment for that of the officer. To warrant such interference, it must appear by clear and convincing evidence that the assessor has been guilty of actual fraud, or has acted arbitrarily or capriciously, or has so grossly and palpably overvalued the property that fraud will be presumed. This court has indicated its adherence to the foregoing principles in numerous cases. An early, often cited one is *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553. The latest expression of the court is *Dexter Horton Bldg. Co. v. King County*, 10 Wn. (2d) 186, 116 P. (2d) 507. There, our prior decisions are exhaustively reviewed.

There is no evidence in the record in this case sufficient to sustain a finding that the assessor acted in bad faith, or that his conduct was arbitrary or capricious. The appellant seems to contend that the assessment was made on a fundamentally wrong basis, but the record does not bear out the contention. The testimony of the deputy assessor who made the original assessment is much too long to be quoted in full, but the following excerpt indicates that, in fixing the valuation, he took into consideration many different factors:

"I considered the then reproduction cost of the building as of 1936, and its depreciated value at that time, the location of the property in relation to the business district, location of the property as to its usefulness, the probable growth of a city located as this one is, its relation to the location of the hotel property. I considered the potential value of the property, future value, I considered the economical conditions that were in existence at that time and have been in existence for the past seven or eight years. I considered the potential income of that particular period, as near as I could approach it, in comparison with other properties that I knew a little something about. I considered the district around it; considered the values of property adjacent to it and out from it some distance; considered it from the standpoint of other values that I had placed on the rolls, and just general conditions arising with that particular property. Q. What was it you said about income? A. I considered the income from the property, the potential income, or the probable income. Q. For the period that would be earned during 1936 and 1937? A. Yes."

The witness further testified, in effect, that, in arriving at the value of the property, he considered also the amount of the fire insurance and the type and character of the building and its condition at the time the assessment was made.

In the absence of a showing of actual fraud or arbitrary or capricious conduct on the part of the assessor, we have but to inquire whether the assessed value was so far in excess of the fair cash market value as to constitute constructive fraud.

Many expert and other witnesses testified on both sides; the testimony was voluminous and covered a wide range. To analyze it in detail would unduly extend this opinion. Appellant's witnesses testified to values ranging from $45,000 to $80,000, while respondents' witnesses testified that the value placed upon the property by the county assessor was not

substantially in excess of its true or market value. The trial court accepted, and based its findings upon, the testimony of respondents' witnesses. One reason for doing so is stated in the court's memorandum opinion as follows:

"All of the plaintiff's [appellant's] witnesses expressing an opinion as to the value relied upon income as the only factor on which the computation could be made. It is true that some of them stated that they had considered other factors, but the three real estate men and others who mentioned other factors stated that, after consideration, they felt no basis of value other than income should be used in this case. Consequently, all of plaintiff's witnesses did not include nor give proper credit to the other factors and matters which the Supreme Court in the case cited [*Bellingham Community Hotel Co. v. Whatcom County*, 190 Wash. 609, 70 P. (2d) 301, *supra*], and in other cases, has said should be considered."

The income of property is a proper factor to consider in fixing its value for the purpose of taxation, but it is not by any means the only one. It should be considered in connection with every other factor affecting the true cash market value of the property. *Dexter Horton Bldg. Co. v. King County*, 10 Wn. (2d) 186, 116 P. (2d) 507, *supra*, and cases therein cited.

Again, as in that case, we call attention to the excellent article by John N. Rupp on the doctrine of constructive fraud in the Washington law of taxation, appearing in the 1937 Washington Law Review, vol. 12, p. 205 *et seq.* We quote therefrom as follows:

"We come now to the cases in which 'flagrantly excessive valuation' was held to be of itself sufficient to warrant the interposition of the court on behalf of the taxpayer. It is perhaps significant to note that of the thirty-two cases examined under this head there were only fifteen in which the court saw fit to grant relief to the taxpayer; whereas relief was granted in fifteen out of the twenty cases heretofore considered

under the other classifications. Further, the fact that the trial courts were reversed in only five cases out of thirty-two may be observed as perhaps an indication that the supreme court is loathe to disturb the action of a trial court on a matter in which opinion evidence is so important."

For the reason suggested in the concluding sentence of the quotation, we think this is a case where full weight should be given to the well-established rule that the trial court's findings based upon conflicting testimony will not be disturbed unless the evidence preponderates against them. Furthermore, the following undisputed facts seem to support the trial court's conclusion as to value: The actual cost of the hotel building, a 15-story, 147-room structure built in 1929, was upwards of $420,000; in 1936, the building was insured against loss by fire in the amount of $235,000; and the gross income of the hotel progressively increased from $40,023.58 in 1933 to $58,185.96 in 1937.

We conclude that the appellant failed to meet the burden of proving such a gross and flagrant overvaluation of its property as to constitute constructive fraud.

Judgment affirmed.

ROBINSON, C. J., MAIN, BLAKE, and STEINERT, JJ., concur.