**Vernon DYKSTRA, Plaintiff and Appellee,**

v.

**NATIONAL BANK OF SOUTH DAKOTA, a corporation, Defendant and Appellant.**

**No. 13393.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 19, 1981.

Decided Jan. 19, 1983.

Richard A. Johnson of Willy, Pruitt, Matthews, Farrell, Frankman & Johnson, Sioux Falls, for plaintiff and appellee.

M.T. Woods of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

HENDERSON, Justice (on reassignment).

## ACTION

This is an action averring negligence against a bank which resulted in a judgment for $6,000.00 in favor of plaintiff-appellee. We affirm.

## FACTS

Appellee Dykstra entered a written agreement to purchase a Cadillac purport-

edly owned by James and Peggy Bateman. Appellee Dykstra presented James Bateman with a personal check drawn upon appellant National Bank of South Dakota payable to "James Bateman and Peggy Bateman." The bank knew that appellee Dykstra, a customer of twenty years, had made a deal on a Cadillac. Appellant bank loaned appellee Dykstra money for the purchase of the automobile.

James Bateman appeared at appellant bank's main office and, in the presence of bank officer James Murphy, endorsed "James Bateman and Peggy Bateman" on appellee Dykstra's check. It was subsequently discovered that Peggy Bateman did not exist and James Bateman was not the owner of the Cadillac. Appellee Dykstra informed appellant bank of the fraud within nine days of Bateman's endorsement. Upon payment of an additional $6,000.00, appellee Dykstra received title to the Cadillac from its true owner.

## ISSUES

### I.

DID APPELLANT BANK ACT NEGLIGENTLY IN HONORING A CHECK THAT ITS OFFICER KNEW WAS IMPROPERLY ENDORSED? WE HOLD THAT IT DID.

### II.

DOES THE APPLICATION OF SDCL 57A–3–405 AND SDCL 57A–3–406 ABSOLVE APPELLANT BANK'S NEGLIGENCE? WE HOLD THAT IT DOES NOT.

## DECISION

### I.

Initially, we must discern if the improper endorsement issue is properly before us. The trial court's memorandum opinion forthrightly states that allowing a forgery in the presence of a bank officer is completely inconsistent with reasonable commercial banking standards. Although a memorandum opinion is simply the trial court's opinion of facts and law, *Christiansen v. Strand,* 82 S.D. 416, 147 N.W.2d 415 (1966), and our review here is limited to the actual findings of fact and conclusions of law, *Connelly v. Sherwood,* 268 N.W.2d 140 (S.D.1978), we have examined the trial court's findings of fact and conclusions of law and we hold the improper endorsement issue was preserved for our consideration.

Specifically, the trial court found that James Bateman signed Peggy Bateman's name in the presence of appellant's officer, James Murphy. The trial court concluded that appellee Dykstra notified appellant bank within a reasonable time period about the problems with the check. Therefore, we have a sufficient foundation to proceed with our examination of this issue.

Appellant's officer tolerated forgery in his presence. Obviously, appellant bank should have required the check to be endorsed by both payees. In permitting a forged endorsement, appellant bank was not following a commercially established standard set for handling the purchase and finance of cars in Sioux Falls, South Dakota. It was negligence on the part of the appellant bank not to require a proper endorsement. U.C.C. § 3–405. Official Comment 1, states that "a purportedly regular chain in indorsements is required."

Additionally, the appellant bank's own officer testified that the bank's standard policy is to secure title of an automobile before releasing the funds. Appellant bank failed to secure title. The trial court ruled on the negligence issue four-square in Conclusion of Law VII which states: "That plaintiff is entitled to recover because of defendant's negligence the sum of $6,000.00, plus costs." We agree with the trial court.

## II.

Appellant bank contends that SDCL 57A–3–405 and SDCL 57A–3–406[1] absolve it from liability. We disagree. Appellee Dykstra may have been unwise to purchase the Cadillac, however, this does not absolve appellant bank's responsibility to conduct its banking in a proper manner. Permitting forgery in an officer's presence is, ipso facto, poor banking. Appellee Dykstra may be made responsible only if his negligence proximately caused the bank to pay this forged check. We hold it was the bank's negligence which proximately caused the loss. Further, appellee Dykstra owed a duty to disclose a forgery to the bank within a reasonable time. Appellee Dykstra disclosed the forgery upon his discovery thereof.

*Flaherty v. Bank of Kimball,* 75 S.D. 468, 68 N.W.2d 105 (1955), holds that the duty of a bank to its depositors (appellee Dykstra was such) is based on implied contract. In Conclusion of Law III, the trial court expressed: "That the duty of the bank rests on implied contract." We went on to hold in *Flaherty* that a bank may only pay a check upon a signature of the drawer and the bank must bear the loss for paying a forged or altered check if the conduct of the drawer has not contributed to induce the payment. Appellee Dykstra did not induce the bank officer to cash a forged instrument.

Had the bank officer not permitted a forgery in his presence and the issuance of two bank drafts for $4,500.00 based thereon, there would have been no loss. It was the bank's poor practice which proximately caused the customer's loss.

Affirmed.

1. SDCL 57A–3–405 provides:
   (1) An endorsement by any person in the name of a named payee is effective if
       (a) An impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or
       (b) A person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or
       (c) An agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

FOSHEIM, C.J., and DUNN, J., concur.

WOLLMAN and MORGAN, JJ., dissent.

MORGAN, Justice (dissenting).

I dissent.

I disagree with the trial court decision which imposed liability under one theory and I disagree with the majority decision which imposes liability under an entirely different theory.

Under the findings of fact and conclusions of law, the trial court's theory of liability is clearly predicated on the failure of the bank to secure the title to the vehicle in question when the check given in payment thereof was cashed. In essence, Findings of Fact No. 8 noted that Bateman endorsed the check, No. 9 found that Bateman had received two checks in return which the record shows were divided one-half payable to himself and one-half to his alleged sister Peggy, and No. 10, crucial to me, is that the bank did not require the certificate of title to be attached to the check when cashed. Based on these findings, the trial court concluded that the bank did not follow community standards for handling the purchase of cars and the ultimate conclusion that Dykstra is entitled to recover because of bank's negligence. While I have no disagreement with the trial court's findings as far as they go, I would hold that they do not support the conclusion of law that the bank was negligent in this case for failure to follow community standards.

First of all, we have to realize that Dykstra was dealing with a con artist who drew

(2) Nothing in this section shall affect the criminal or civil liability of the person so endorsing.
   SDCL 57A–3–406 provides:
       Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

the so-called agreement with Dykstra and signed it for himself and on behalf of his sister. As the trial court correctly notes, the bank was not a party to the original agreement but later had knowledge of its terms. As I read this so-called agreement, community standards for handling purchase of cars went out the window since the agreement specifically provided payment as of the date thereof and further and most important, provided: "I Jim Bateman will have title mailed in ten days to Vernon Dykstra." How can the bank be faulted under that agreement? Further, the agreement is so deficient in that it merely identified a "1977 Eldorado" without further identification as to model, motor or identification number. Any bank trying to enforce the usual community standards would have had difficulty knowing that the title tendered was the correct one as I assume that more than one 1977 Eldorado was built in 1977.

To the trial court's theory of liability, the majority opinion apparently adds an additional theory of improper endorsement which the majority terms forgery. The majority opinion preserves that theory for appellate review through the artifice of referring to the trial court's memorandum opinion. The majority opinion pays lip service to our long standing rule that the memorandum opinion is not considered on review and that our review is limited to the trial court's findings of fact and conclusions of law. *Christiansen v. Strand,* 82 S.D. 416, 147 N.W.2d 415 (1966); *Connelly v. Sherwood,* 268 N.W.2d 140 (S.D.1978). The majority then blatantly ignores this rule. I would hold that the issue of the endorsement is not properly before us; but even assuming that it were, it adds nothing to the trial court's decision inasmuch as the impropriety of the endorsement did not proximately cause any injury to Dykstra. Dykstra's loss was not occasioned by charging his account with $8900, but rather, his loss was solely caused by the failure of Bateman to produce the title for the car.

The only case law cited by the majority in support of their opinion is *Flaherty v. Bank of Kimball,* 75 S.D. 468, 68 N.W.2d 105 (1955). In *Flaherty,* the bank was sued for charging depositor's account with excess sums of money because the payees had increased the amount payable on the checks. Here, in contrast, the bank paid out by cashier's checks, as previously noted, exactly the amount for which the check was drawn by Dykstra and exactly the amount that the agreement stated Dykstra had that day paid to Bateman.

The effect of the trial court's opinion and the majority opinion is to make the bank insurer against Dykstra's loss which was based on his own ineptitude or cupidity. Granted, Dykstra was dealing with a con artist. The record, however, indicates that he is a responsible business executive who should have protected himself by verifying some of the details of ownership. He was not dealing with a reputable dealer, but he apparently did nothing further than look under the hood, kick the tires, and road-test the car.

I would reverse the decision of the trial court and remand with instructions to enter judgment in favor of the bank.

I am authorized to state that Justice WOLLMAN joins in this dissent.