John D. SABOW, Appellee,

v.

PENNINGTON COUNTY, Appellant.

No. 17937.

Supreme Court of South Dakota.

Considered on Briefs Feb. 9, 1993.

Decided May 19, 1993.

Donald R. Shultz and Haven L. Stuck, Lynn, Jackson, Shultz & Lebrun P.C., Rapid City, for appellee.

Ronald D. Buskerud, Pennington County Deputy State's Atty., Rapid City, for appellant.

WUEST, Justice.

This is an appeal by Pennington County from a circuit court judgment determining the 1991 tax assessment of John D. Sabow. We reverse and remand.

## FACTS

John D. Sabow (hereinafter Taxpayer) appealed to the Pennington County Board of Equalization (hereinafter Board) the 1989 tax year assessment of his residence by the director of equalization. The Board made a slight reduction, but Taxpayer appealed to the circuit court. After a de novo trial was held, the court entered a judgment setting the value of the residence at $368,000.

For tax year 1991, the director of equalization set the value of the residence at $509,600. Taxpayer appealed; the Board upheld the valuation. Taxpayer again appealed to the circuit court.

Upon Taxpayer's motion, the court entered an order for partial summary judgment. The court ruled the $368,000 value of the property was res judicata except for improvements to or appreciation of the property since the date of the previous decision.

A hearing was held to determine the value of any improvements to or appreciation of the property subsequent to the first judgment. The trial court found the evidence introduced by County was insufficient to establish any increase in the value of the property since the first judgment.

Pennington County appeals. We will address two issues, adding additional facts where necessary.

■ The proper scope of review of a trial court's decision in a trial de novo of a tax assessment is whether the decision was clearly erroneous. *Kindsfater v. Butte County*, 458 N.W.2d 347, 350 (S.D.1990); *Knodel v. Board of County Comm'n of Pennington Co.*, 269 N.W.2d 386, 389 (S.D. 1978); *Yadco, Inc. v. Yankton County*, 89 S.D. 651, 659, 237 N.W.2d 665, 669–70 (1975).

## ANALYSIS

### I. WHETHER THE TRIAL COURT ERRED IN HOLDING THE VALUATION OF PROPERTY FOR A PREVIOUS TAX YEAR WAS RES JUDICATA.

■ Taxpayer asserts the first judicially determined property value is res judicata in a subsequent tax year, absent a change in conditions. County claims the judicially determined value is conclusive only for the tax period at issue in the first action.

We have previously ruled that an issue may be res judicata "if it is comprised of the facts which establish or give rise to the right a party seeks to enforce." *Schell v. Walker*, 305 N.W.2d 920, 922–23 (S.D. 1981); *Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 240 N.W.2d 102 (1976); *Jerome v. Rust*, 23 S.D. 409, 122 N.W. 344 (1909). We have applied the doctrine of res judicata in a tax case. In *Schell*, we determined that the method of real estate tax assessment challenged was the same cause of action previously litigated in *Knodel*. *Schell*, 305 N.W.2d at 922–23. The complaint in *Schell* involved the same facts, alleged the same wrong and, nominally, involved the same parties; therefore, it was the same cause of action and res judicata operated as an absolute bar to relitigation. *Id.*

The question whether res judicata may be applied to a subsequent real estate valuation, as opposed to the method by which

that value was calculated, has never been addressed by this court. The overwhelming weight of authority from other jurisdictions supports the proposition that a real estate assessment for purposes of taxation is not res judicata concerning the property's value for succeeding years because each tax period gives rise to a separate cause of action.

The seminal case in this area is *People v. Fahrenkopf*, 279 N.Y. 49, 17 N.E.2d 765 (1938). In *Fahrenkopf*, the Court of Appeals of New York reversed the New York Supreme Court's ruling that a tax value for one year was res judicata in a subsequent year.

> It is of the essence of an assessment that it fixes a value as of a certain time. Each annual proceeding is separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll.... the doctrine of res judicata can have no true application to the issues of value in recurring assessment proceedings.

*Fahrenkopf*, 17 N.E.2d at 766.

The Supreme Court of Pennsylvania held real estate value for purposes of taxation is not res judicata as to the value of the property in following years. *In re 1229–35 Chestnut St.*, 362 Pa. 313, 66 A.2d 242 (1949). In *Rieck*, the Pennsylvania court opined:

> [A] real estate assessment for purposes of taxation for one year is not *res judicata* of the question of the property's fair market value for assessment purposes for a succeeding or later year.... The decisional law of other jurisdictions fully confirms the view we take of the matter.... The only States cited where the courts formerly held otherwise ... now hold[ ] that an assessment valuation for a particular year is not *res judicata* of a like question of value for a different year.

*Appeal of Rieck Ice Cream Co.*, 417 Pa. 249, 209 A.2d 383, 385 (1965) (citing *Sheldon Hotel Corp. Assessment Appeal*, 66 A.2d 242 (Pa.1949)).

Courts in other jurisdictions agree. *Jackson Park Yacht Club v. Illinois Dept' of Local Gov't Affairs*, 93 Ill.App.3d 542, 49 Ill.Dec. 212, 417 N.E.2d 1039, 1042 (1981) (cause of action for taxes for one year is not identical to cause of action in subsequent year; therefore, decision adjudicating tax status one year is not res judicata in later years); Trustees of *Flynn's Estate v. Board of Review*, 226 Iowa 1353, 286 N.W. 483, 487 (1939) (an assessment for each year is separate and its adjudication for one year cannot fix the value for succeeding years); *Defenders' Townhouse, Inc. v. Kansas City*, 441 S.W.2d 365, 369 (Mo.1969) (each year's tax is a separate transaction which gives rise to a new cause of action; *Drey v. State Tax Comm'n*, 345 S.W.2d 228, 235 (Mo. 1961) (judicial determination of value is not res judicata in a subsequent year but is admissible evidence as to value); *Beatrice Foods Co. v. Lindley*, 24 O.O.3d 68, 70 Ohio St.2d 29, 434 N.E.2d 727, 731 (1982) (tax assessment for different audit period is not res judicata for later audit period); *Standard Oil Co. v. Zangerle*, 26 O.O. 82, 141 Ohio St. 505, 49 N.E.2d 406, 410–11 (1943) (assessment fixes value for definite date or year and is final and conclusive for that year only). "The courts agree that a judgment involving a tax for one period, irrespective of what has been litigated and determined by the judgment, never operates as an absolute bar precluding the maintenance of a subsequent suit concerning a tax of the same kind for another period." 72 Am.Jur.2d State and Local Taxation § 1150 (1974). "The weight of authority supports the proposition that the determination of value of property of a particular date is not conclusive as to the value of the property on a subsequent date." Annotation, *Judgment in tax cases in respect of one period as res judicata in respect of another period*, 150 A.L.R. 5, 79 (1944).

In *Bellingham*, the Supreme Court of Washington rejected an appellant's contention that a judgment of valuation for the previous year was conclusive and binding upon the county unless there had been some material change in the property affecting its value. *Bellingham Communi-*

*ty Hotel v. Whatcom County*, 12 Wash.2d 237, 121 P.2d 335 (1942). The court noted that a Washington statute required reassessment of real estate every two years and stated: "Manifestly, the statute contemplated that real property should be assessed in the even-numbered year and reassessed in every succeeding even-number year." *Id.*, 121 P.2d at 337.

The reasoning of the Washington Supreme Court is particularly applicable to this case. At the time in question, SDCL 10–6–2 provided:

> All real and personal property subject to taxation shall be listed and assessed annually during the first six months of each year, but the value of such property is to be determined according to its value on the first day of January preceding the assessment.[1]

The statute commands the director of equalization to appraise property *each year*. To apply res judicata to a real estate value in ensuing years would exempt that property from the operation of the statute.

Further, where a statute directs reevaluation of property each year, applying res judicata to the value of one taxpayer's property would lead to inequity among taxpayers. The United States Supreme Court, in refusing to apply collateral estoppel to a prior judgment stated:

> [I]f such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion.

*Commissioner v. Sunnen*, 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898, 906–07

(1948) (articulating the "separable facts doctrine" in collateral estoppel as applied to tax actions); *see also Peck v. C.I.R.*, 904 F.2d 525, 527 n. 3 (9th Cir.1990).

Additionally, the taxpayer appealing an assessment bears the burden of overcoming the presumption that the director of equalization's value is correct. *Roseland v. Faulk County Bd. of Equalization*, 474 N.W.2d 273, 275 (S.D.1991); *Knodel*, 269 N.W.2d at 389; *Yadco*, 89 S.D. at 656, 237 N.W.2d at 668. If res judicata freezes the value except for improvements or appreciation of the property, the burden is impermissibly shifted from the taxpayer to the director of equalization.

In accord with the great majority of jurisdictions, we find that a judicial determination of value for tax assessment purposes is res judicata only for that tax period. It was error to find the value of the residence for tax year 1989 was res judicata in a subsequent tax year.

## II. WHETHER THE TRIAL COURT ERRED IN FINDING THE PROPERTY HAD NOT APPRECIATED IN VALUE SINCE THE FIRST JUDGMENT.

As stated above, the trial court ignored the presumptive correctness of the assessment of property by the director of equalization and shifted the burden of proof from the Taxpayer to the director. The court then allowed only evidence concerning an improvement in or appreciation of Taxpayer's property from the date of the previous judgment. It refused to allow testimony as to a later reassessment for full value.

SDCL 10–6–33 requires that "[a]ll property shall be assessed at its true and full value in money."[2] The record shows the

---

1. SDCL 10–6–2 was amended in 1992 and now provides:

   All real property subject to taxation shall be listed and assessed annually, but the value of such property is to be determined according to its value on the first day of January preceding the assessment.

2. SDCL 10–6–33 provides:

   All property shall be assessed at its true and full value in money. The true and full value is the taxable value of such property upon which the levy shall be made and applied and the taxes computed. In determining the true and full value of property the director of equalization may not adopt a lower or different standard of value because it is to serve as a basis of taxation. The director may not adopt as a criterion of value the price for

court refused to allow evidence of a 1991 reassessment of all property in Pennington County. The director of equalization would have testified that 1989 Pennington County property assessments were approximately 75 percent of full market value; that Taxpayer's property had been assessed at 72 percent of full value; that the 1991 reassessment of all property was to bring Pennington County property assessments closer to full value; and that the 1991 increase in assessment of Taxpayer's property was to bring it to full assessment value. The court refused to admit any testimony concerning reassessment or equalization. This was clearly erroneous.

We reverse and remand to the circuit court for a new trial consistent with this opinion.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

If the anatomy of this opinion were broken down, the opinion contains two salient parts: (1) procedural history and (2) legal citations. Unfortunately, such an anatomy does not tell the true story of this case.

I dissent, not because I disagree with the legal authorities herein cited, but rather because a recitation of those authorities assume that the facts of this case fit squarely within the authorities. By dissenting to the majority opinion, I simply would not take the procedural background and apply it, using a mechanical policy of adherence to the citations in the opinion.

I have carefully reviewed this file. Nowhere in the Findings of Fact and Conclusions of Law has the trial judge used the phrase "res judicata." However, the trial court mentioned such phrase from the Bench. We do not take this to be a holding nor do we use a Memorandum Decision as being the decision. It is the Findings of Fact and Conclusions of Law which are governing. *Dykstra v. National Bank of South Dakota*, 328 N.W.2d 862, 863 (S.D. 1983).

Again, looking at the anatomy of this opinion, it appears that the tendered majority writing consists of seven pages, over six pages thereof being a recitation of legal cases and authorities. Apparently, the thrust of logic simply is this: All of these legal authorities can be applied to the procedural history, thus making it perfectly obvious that the conclusion to reverse the trial judge is inescapable.

Missing, however, is the application of the facts and the evidence taken below. Therefore, the tendered majority opinion arrives at an unfounded conclusion. Experience teaches us that many legal writers restate rules of ritual and precedent, ad nauseam, without employing analytical frankness to the facts at hand.

Dr. Sabow's home was built specifically to accommodate his physical infirmity. He has termed himself a "spared" quadriplegic. He is a former total quadriplegic who gained some use of his limbs. Without special features in his home to allow him easy movement to and from his house at all hours, he would be unable to serve his patients. He walks with the aid of a cane and leg braces, using a motorized cart within his home. He purchased the land for his home at an exorbitant price which is approximately two and one half minutes from the Rapid City Regional Hospital, where he practices as a neurologist. There are many unusual features about this home to include the unusual size of the rooms with abnormally large bathrooms. There are highly elevated toilets therein. Dr. Sabow has an exercise room to maintain his strength and there are non-skid surfaces for easy mobility for a motorized cart,

which the property would sell at a forced sale, or in the aggregate with all the property in the town or district. The director shall value each article or description by itself and at an amount or price as he believes the property to be fairly worth in money. The true and full value shall be determined by appropriate consideration of the cost approach, the market approach and the income approach to appraisal. The director of equalization shall consider and document all elements of such approaches that are applicable prior to a determination of true and full value.

within the home. The halls are very wide. A personal elevator exists so that Dr. Sabow can move easily to three levels in this home. He is available to his patients seven days a week and is often called in for consultation in the middle of the night. Notwithstanding the fact that the American Medical Association standards classify him as "severely handicapped," he carries on a full time practice. Very few people would be interested in purchasing this home because of its design for his needed independence and safety. There are other special accommodations but these are for the primary purpose of functionality and not extravagance.

Let us now examine what transpired at the trial court and not get bogged down in a legal treatise. In other words, let us take a look at the evidence in this de novo proceeding by the trial court. In so applying our thought process, we shall arrive at a different conclusion than the assessment authority, as the trial court did.

Pennington County called one witness at trial—the Director of Equalization, Ronald G. Richmond. Therefore, its case rises or falls in his testimony as to the proper assessment of Dr. Sabow's home. Remember, this is a de novo trial and the circuit judge sits, in effect, as the Board of Equalization. As such, the circuit court judge must value the property using his or her independent judgment. *Hutchinson County v. Fischer*, 393 N.W.2d 778 (S.D. 1986). Sabow's counsel asked and Richmond replied:

Q: In fact can you find a comparable sale to Dr. Sabow's property in Pennington County?

A: *Not through our current system, nothing that matches his square footage, quality.*

Earlier, same questioner, same witness:

Q: Now, did you come up with a figure that you believe to be, I guess, at this point a representative appreciation percentage in the Rapid City area?

A: The 9.4 percent.

Q: Okay. Now, what kind of—you said you used a model. What type of model do you use?

A: *Well, basically what we're using is the average type house*, average type construction that sells. And I would be the first to agree *it is not comparable* with Dr. Sabow's property. I'll admit that. There aren't too many properties in Rapid City or in Pennington County like Dr. Sabow's property.

In point of fact, there was not one like it. As pointed out above, Richmond could not find one comparable sale. Obviously, there was no comparable market data. So let us examine the testimony of Pennington County's only witness at how he arrived at an assessed value.

Continuing—same questioner, same witness:

Q: Are you at this time prepared to make an opinion that Dr. Sabow's house increased 9.4 percent during the year *?

A: I *feel* it *probably* would have, yes, but then again, we're looking at comparables to an *average type of residence.* (Note by author: Pennington County, over and over, testified that Dr. Sabow's home was anything but *an average type of residence*).

Under *Hutchinson County, supra*, a trial court is given broad authority to determine valuation. It is not restricted to determine if an assessment is excessive or arbitrary. It is to exercise independent judicial judgment to determine valuation. *Id.* Faced with the uniqueness of this home, that is precisely what the trial court did.

It is obvious the trial court did not use the *representative* figure of 9.4%. Rather, its decision comported to the language in *Yadco, Inc. v. Yankton County*, 237 N.W.2d 665, 667 (S.D.1975) wherein we held:

---

* Richmond earlier testified that, based upon appreciation in the value of property, there was a 9.4 percent increase for Rapid City and the immediate area for the year 1990.

Often, however, there is no market for the property to be assessed. When that is the case, the assessor must still determine the full and true market value and in doing so, he has to consider every other element which can reasonably effect its value.

This Court appears to find fault with the trial court having, in its words, stated: "[I] will give cognizance of the original decision of Judge Konenkamp and consider evidence of valuation subsequent to that decision." Thereupon, the trial court *ordered a trial and a trial to the court was held.* Specifically, the trial court expressed that the parties could produce further valuation evidence. Pennington County did not produce any valuation testimony other than a blanket increase of 9.4% on "representative property" in the county. Pennington County admitted the Sabow property was not "representative property." Pennington County impaled its own position with testimony from its singular witness. Simply put, the Sabow property was assessed by a formula or percentage which, admittedly, did not apply. Having failed totally in the comparable market test, Pennington County had to turn to the cost approach. Its testimony, through Richmond, was that Dr. Sabow's home was not individually examined from the cost of construction standpoint. Failure in proof again, you see. Having failed 100% in producing evidence on market approach or cost of construction approach, the trial court simply could place no credence upon such type of testimony. As always, this Court has held a party cannot elevate its position over its own testimony. *Werner v. Norwest Bank,* 499 N.W.2d 138 (1993); *Lamp v. First National Bank,* 496 N.W.2d 581 (S.D.1993); *Lalley v. Safway Steel Scaffolds, Inc.,* 364 N.W.2d 139, 141 (S.D.1985); *Swee v. Myrl & Roy's Paving, Inc.,* 283 N.W.2d 570, 572 (S.D.1979).

Dr. Sabow testified that:

1) His home had a valuation of $368,000;

2) No improvements were made to the home since the last evaluation;

3) No appreciation had taken place and he expressed that the home had actually depreciated.

Therefore, this testimony refuted any so-called presumption of the director of equalization. This testimony evaporates, because it contradicts, the presumption. *Brookings Assoc. v. State Bd. of Equalization,* 482 N.W.2d 873, 876 (S.D.1992). In the end, Pennington County raised the Sabow property for no reason other than to raise taxes and obtain more revenue. County was given the opportunity to present appreciation testimony but it failed to do so. This trial court was unable to find any evidence to support the substantial increase in assessment. Therefore, this Court should not overturn the trial court's findings of fact as being clearly erroneous. No mistake was made by the trial court. *Crotty v. City of Deadwood,* 440 N.W.2d 525, 528 (S.D.1989).

Finally, I wish to express that if all of the authorities set forth in the majority opinion concerning "res judicata" should be applied hereto, still I would dissent. If by any measure of Judge Tice's actions it can be said that he used "res judicata," in point of fact Judge Tice decided this case by the evidentiary proof. If a trial court has reached the right result, the reviewing court will not overturn the case in question because trial court expressed the wrong reason. *House of Seagram, Inc. v. Assam Drug Co.,* 83 S.D. 320, 159 N.W.2d 210 (1968). *See also, Kirby v. Western Sur. Co.,* 70 S.D. 483, 19 N.W.2d 12 (1945) for our holding that when a judgment is correct, it will not be reversed even though based on an erroneous conclusion or a wrong reason.